2000 SD 21

**STATE of South Dakota, Plaintiff and Appellant,**

v.

**John W. ALLISON, Defendant and Appellee.**

No. 20505.

Supreme Court of South Dakota.

Argued March 22, 1999.

Decided Feb. 9, 2000.

Mark Barnett, Attorney General, Craig M. Eichstadt, Deputy Attorney General, Pierre, for plaintiff and appellant.

Daniel W. Lias, Sioux Falls, for defendant and appellee.

KONENKAMP, Justice

[¶ 1.] Defendant failed to return government issued equipment at the end of his military service with the South Dakota Army National Guard. When he was charged with theft under a law making it a crime to retain military property, the circuit court dismissed the indictment, concluding that the statute violated our consti-

tutional prohibition on imprisonment for debt. We reverse. Service in the armed forces is not a debtor-creditor relationship, and issuance of military equipment is not a loan or an extension of credit, but a temporary entrustment of public property, which must be restored to the government.

### Facts

[¶ 2.] After John W. Allison ended his service with the South Dakota Army National Guard, he failed to turn in certain government issued ammunition, clothing, footwear, and other equipment, totaling approximately $650 in value. The National Guard sent him certified letters demanding return of the items. The letters were sent back unclaimed. Allison was indicted and arrested for grand theft of military equipment under SDCL 33–5–15.1. That statute provides:

> Any person who fails to return any military property, equipment, or other items belonging to the armed forces of the United States, any reserve component, or the South Dakota national guard, or any element or component thereof, is guilty of theft. The degree of theft shall be determined pursuant to § 22–30A–17.

If the value of the property exceeds five hundred dollars, then the crime is grand theft. SDCL 22–30A–17. Theft is defined as taking or exercising "control over [the] property of another with intent to deprive him of it. . . ." SDCL 22–30A–1.

[¶ 3.] On its own cognizance, the circuit court questioned the constitutionality of § 33–5–15.1 under article VI, section 15, of the South Dakota Constitution. That provision states: "No person shall be imprisoned for debt arising out of or founded upon a contract." Allison then moved to dismiss. In its opinion, the court held the statute unconstitutional, reasoning that the "relationship and bailment of property arise out of a contract of employment." Failure to return the items, the judge thought, created a debt to the National Guard originating from the enlistment contract. The court dismissed the indictment.

[¶ 4.] On appeal, the State composes its sole issue as follows: "Is a statute, making a member of the South Dakota National Guard guilty of theft if he fails to return military property, unconstitutional as imprisonment for failing to pay a debt that arises out of contract, where the statute does not contain an intent requirement, and where the statute gives no exemption to the guardsman if he pays for the equipment?"

### Standard of Review

[¶ 5.] "Challenges to the constitutionality of a statute meet formidable restrictions." *State v. Hauge,* 1996 SD 48, ¶ 4, 547 N.W.2d 173, 175. We review such challenges de novo. *Wegleitner v. Sattler,* 1998 SD 88, ¶ 4, 582 N.W.2d 688, 689 (citation omitted). We recognize a strong presumption of constitutionality. *Kyllo v. Panzer,* 535 N.W.2d 896, 898 (S.D.1995) (citing *Specht v. City of Sioux Falls,* 526 N.W.2d 727, 729 (S.D.1995)). To be invalidated a statute must be proved a breach of legislative power beyond a reasonable doubt. *City of Chamberlain v. R.E. Lien, Inc.,* 521 N.W.2d 130, 131 (S.D.1994). Only when the unconstitutionality of a statute is plainly and unmistakably shown will we declare it repugnant to our constitution. *South Dakota Educ. Ass'n v. Barnett,* 1998 SD 84, ¶ 22, 582 N.W.2d 386, 392 (quoting *Poppen v. Walker,* 520 N.W.2d 238, 241 (S.D.1994) (citations omitted)). "If a statute can be construed so as not to violate the constitution, that construction must be adopted." *Cary v. City of Rapid City,* 1997 SD 18, ¶ 10, 559 N.W.2d 891, 893 (citation omitted). Our function is not to decide if a legislative act is unwise, unsound, or unnecessary, but rather, to decide only whether it is unconstitutional.

### Imprisonment for Debt Arising from Contract

[¶ 6.] When Allison joined the South Dakota Army National Guard, he signed an enlistment agreement. Its principal purpose was to "record [the] enlistment . . . into the U.S. Armed Forces."

The contract specifically stated that it was "more than an employment agreement." It anticipated service in combat and hazardous situations, required obedience to assigned duties and lawful orders, and entitled Allison to pay and benefits. The contract specified that the laws governing military personnel may change without notice and that such changes may affect one's responsibilities as a member of the Armed Forces, regardless of the provisions of the enlistment agreement. Nothing in this document, however, extended credit or created debt. Nor did it produce any type of debt repayment obligation. Plainly, it was an agreement to serve in the National Guard and be subject to the laws governing military service.

[¶ 7.] Our constitution forbids imprisonment "for debt arising out of or founded upon a contract." S.D. Const. art. VI, § 15. Many learned scholars have discoursed on the bane of imprisonment for debt. Although the practice is of ancient origin, in truth, the term "imprisonment for debt" has no fixed meaning. Oftentimes, it meant that a debtor could be imprisoned at the will of the creditor or upon perfunctory legal process. In the Nineteenth Century, however, it came to be understood as a form of private civil remedy against the actual person of the debtor. As the United States Supreme Court once explained:

> [B]y suing out a *capias ad satisfaciendum* [1] upon their judgment, and by taking into actual custody the body of the [debtor] under this process, ... [creditors] had obtained that complete and highest satisfaction of their demand, of which they could be deprived only by the act of God, by operation of law, or by

their own voluntary acknowledgment, or by a release of their debtor....

*Magniac v. Thomson,* 56 U.S. (15 How.) 281, 302, 14 L.Ed. 696, 705 (1853). The predominant view came to disfavor such a harsh remedy. The Supreme Court later reflected:

> Imprisonment for debt is a relic of ancient barbarism. It has descended with the stream of time. It is a punishment rather than a remedy. It is right for fraud, but wrong for misfortune. It breaks the spirit of the honest debtor, destroys his credit, which is a form of capital, and dooms him, while it lasts, to helpless idleness. Where there is no fraud, it is the opposite of a remedy. Every right-minded man must rejoice when such a blot is removed from the statute-book.

*Edwards v. Kearzey,* 96 U.S. (6 Otto) 595, 602, 24 L.Ed. 793, 797 (1877) (internal citation omitted). With changing attitudes, most states included in their constitutions clauses prohibiting imprisonment for debt. Lawrence M. Friedman, A History of American Law, 272 (2d ed. 1985). The purpose was to

> protect the honest, but unfortunate, debtor from imprisonment ... while at the same time leaving the Legislature at liberty, "as public policy and experience may dictate, to reach the fraudulent and dishonest shifts and devices of the debtor; and to subject him to imprisonment, for the debt he is seeking to avoid the payment of."

*State v. Madewell,* 63 N.J. 506, 309 A.2d 201, 204 (1973) (quoting *Ex parte Clark,* 20 N.J.L. 648, 650 (N.J.Sup.Ct.1846)).

[¶ 8.] The precise meaning of "imprisonment for debt arising from contract" remains elusive.[2] In the Twentieth Century,

---

1. Black's Law Dictionary defines *capias ad satisfaciendum* as: "A body execution enabling judgment creditor in specified types of actions to cause arrest of judgment debtor and his retention in custody until he either pays judgment or secures his discharge as insolvent debtor." Black's Law Dictionary 208 (6th ed. 1990) (citation omitted).

2. During the South Dakota Constitutional Convention of 1885 a brief debate took place that gives only a touch of insight into what the framers intended. If nothing else, the delegates understood the provision to apply in a civil context, not a criminal one.

    Mr. Jessup: I move to strike out all the remainder of the section from the word

most states construing these types of constitutional provisions concluded that "the debt intended to be covered by the constitution must be a ·debt arising exclusively from a personal contractual obligation, express or implied, and judgments rendered thereon." 16B Am.Jur.2d *Constitutional Law* § 629 (1998) (citing *Davis v. State*, 237 Ala. 143, 185 So. 774 (1938) (personal contractual obligation); *State v. Owen*, 129 Idaho 920, 935 P.2d 183 (Idaho Ct.App. 1997) (personal contractual obligation); *Payne v. State*, 462 So.2d 902 (Miss.1984) (personal obligation); *Strattman v. Studt*, 20 Ohio St.2d 95, 253 N.E.2d 749 (1969) (judgments) (other citations omitted); *Voelkel v. City of Cincinnati*, 112 Ohio St. 374, 147 N.E. 754 (1925) (express or implied obligations)). Similarly, in South Dakota we interpreted our constitutional provision to mean that "the Legislature is without authority to provide that a contractor shall be deemed guilty of a crime punishable by imprisonment for failure to pay the claims of creditors furnishing labor and materials from money paid to· him under contract." *Commercial Nat'l Bank of Sturgis v. Smith*, 60 S.D. 376, 244 N.W. 521, 523 (1932).

[¶ 9.] Allison's obligation to return government issued military equipment created

no debt. Black's Law Dictionary defines debt:

A sum of money due by certain and express agreement. A specified sum of money owing to one person from another, including not only obligation of debtor to pay but right of creditor to receive and enforce payment.... A fixed and certain obligation to pay money or some other valuable thing or things, either in the present or in the future. In a still more general sense, that which is due from one person to another, whether money, goods, or services. In a broad sense, any duty to respond to another in money, labor, or service; it may even mean a moral or honorary obligation, unenforceable by legal action....

Black's Law Dictionary 403 (6th ed. 1990) (citation omitted). A majority of courts reviewing challenges similar to this one describe debt as a liability to pay *money* growing out of an express or implied contract. *Speidel v. State*, 460 P.2d 77, 83 (Alaska 1969) (footnote with citations omitted). Even if Allison's obligation could be defined as debt, still it could not be characterized as a private debt. Allison was entrusted with military property. The National Guard gave him equipment for performing his duties as a member of the armed forces. At the conclusion of his

"arising" so that the section shall read "no person shall be imprisoned for debt."

Mr. Owen: If that is the desire of the Convention, I have nothing to say, but if a man converts my property to his own use takes the horse or horses I have loaned him and carries them off and sells them, why, is a man like that to go unpunished?

Mr. Haines: I am opposed to that section as it stands. Now that abolishes all compulsory proceedings subsequent to execution provided for in our code.

There is no punishment for contempt in disobeying the order of the court before which a defendant has been cited supplemental to execution which could be enforced.

(Reading an amendment which was filed with Secretary.)

Will the gentlemen reflect upon the sweeping operations of this section? I therefore move the adoption of the language which I have read.

The motion is seconded.

Mr. Campbell: Do I understand the gentleman to say—

Mr. Haines: It is for disobedience of the order of the court.

Mr. Campbell: I favor the provision as it stands.

Mr. Brookings: Is the amendment before the House?

The Chair: The question before the House is the amendment to the amendment. (Lost.)

By the Chair: The question before the House is upon the amendment to strike out all the words after the word "debt."

The motion is lost.

The Chair: The question now is upon the section as it stands, whether it shall be adopted.

The section is adopted.

South Dakota Debates, 1885, 338–39.

service, he allegedly failed to restore that equipment.

[¶ 10.] Other statutes have been challenged under this provision of our constitution and were upheld. In *State v. Huth,* 334 N.W.2d 485, 489–90 (S.D.1983), for example, we held that imprisonment after failure to pay fees and costs was not violative of the provision. *See also White Eagle v. State,* 280 N.W.2d 659, 661 (S.D. 1979) (repayment of court-appointed attorney's fees as a condition of probation not unconstitutional). In *Hanks v. Hanks,* 334 N.W.2d 856, 857 (S.D.1983), we found that unpaid alimony and child support were not debts founded on contract. Further, in *State v. Mitchell,* 309 N.W.2d 829, 829–30 (S.D.1981), we concluded that conviction and incarceration for passing a nonsufficient funds check was not imprisonment for debt.

■ [¶ 11.] As the Wisconsin Supreme Court wrote: "For stronger reasons it should be held that the constitutional prohibition does not apply where the imprisonment is to punish crime. In such a case the imprisonment is not for any debt arising out of or founded on contract, express or implied, but on account of the criminal act." *Pauly v. Keebler,* 175 Wis. 428, 185 N.W. 554, 558 (1921). Likewise, Allison is not subject to penalty because he failed to pay a debt; he is charged with intentionally failing to return government property. That is what the statute makes criminal. Statutory words are to be given their ordinary meaning. *South Dakota Subsequent Injury Fund v. Casualty Reciprocal Exch.,* 1999 SD 2, ¶ 17, 589 N.W.2d 206, 209 (citations omitted).

[¶ 12.] Because we find that no debt was created when Allison was issued military equipment, our constitutional provision forbidding imprisonment for debt does not apply. Any other decision would create precedent allowing members of the armed forces to keep military equipment, yet evade prosecution. Suppositions about a soldier's inability to return lost or destroyed military property are unnecessary. As the statute in question, SDCL 33–5–15.1, uses the term theft, the statutory definition of theft is incorporated. Thus, under SDCL 22–30A–1, the State must prove that in failing to return equipment, Allison had the "intent to deprive" the government of it. The very case the dissent cites for its argument undoes the dissent's analysis. *See City of Cincinnati v. DeGolyer,* 25 Ohio St.2d 101, 267 N.E.2d 282 (1971):

> It is a fundamental proposition of law that where a court is faced with two possible interpretations of a statute or ordinance, one which would render it constitutional and another which would render it unconstitutional, it is the duty of the court to choose that interpretation which will uphold the validity of the statute or ordinance.

*Id.* at 285. Consequently, the Ohio Supreme Court held that failure to pay income tax required intent as a "basic element of the offense[.]" *Id.* Ohio's constitutional prohibition on imprisonment for debt was not violated. *Id.* Here, the dissent chooses an absurd interpretation, electing to read the statute to make it unconstitutional.

■ [¶ 13.] We will not construe a constitutional provision to arrive at a strained, impractical, or absurd result. *See Brim v. South Dakota Bd. of Pardons and Paroles,* 1997 SD 48, ¶ 17, 563 N.W.2d 812, 816 (internal quotation and citations omitted). The statute is constitutional as applied to Allison. With unreturned military equipment, some of which could be hazardous to public safety, the government's remedy must be more potent than a mere opportunity to sue for recovery.[3] That is what the Legislature intended: Be it bullets or

---

3. To the dissent, civil suits for "replevin" or "specific performance" are the preferred remedies for failure to return military equipment. Would that apply to an Air National Guard pilot who decided to keep a fully armed F–16?

blankets, military equipment must be restored to the proper authorities.

[¶ 14.] Reversed and remanded.

[¶ 15.] MILLER, Chief Justice, and AMUNDSON and GILBERTSON, Justices, concur.

[¶ 16.] SABERS, Justice, dissents.

SABERS, Justice (dissenting).

[¶ 17.] Article VI, Section 15 of the South Dakota Constitution provides:

> **No person shall be imprisoned for debt arising out of or founded upon a contract.**

[¶ 18.] I disagree with the majority and vote to affirm the trial court. SDCL 33–5–15.1 is unconstitutional under article VI, section 15, of the South Dakota Constitution, which prohibits imprisonment for debt arising from contract. As indicated above, the plain words of article VI, section 15 clearly prohibit imprisonment for debt arising from contract.

[¶ 19.] The majority concedes that the Enlistment/Reenlistment Agreement is a contract. It claims instead that Allison's obligation under the contract does not create a debt. Nonsense. If it is not a debt, Allison does not owe anything. If he does not owe anything, he can not be prosecuted. The majority defines debt as a "liability to pay money growing out of an express or implied contract." I do not disagree with this definition. Therefore, in plain language, this is a debt.

[¶ 20.] Webster's Third New International Dictionary 583 (1976) defines "debt" more broadly as:

> [A] neglect or violation of duty; a state of owing; something (as money, goods, or services) owed by one person to another; something that one person is bound to pay to another or perform for his benefit; something owed: obligation. . . .

See also *City of Cincinnati v. DeGolyer*, 25 Ohio St.2d 101, 267 N.E.2d 282, 284 (1971) (defining a debt as "[a]ll that is due a man

under *any* form of obligation or promise.") (citation omitted) (emphasis added).

[¶ 21.] Allison was contractually obligated to return certain goods to the government. For whatever reason, he neglected to fulfill that obligation. That is a debt. Furthermore, the majority fails to acknowledge that Allison's obligation to return military property was set at a monetary value of $662.62. In fact, the State attempted to notify Allison that he could write a check for that amount to avoid prosecution. Therefore, even under these facts and the majority's strained analysis, Allison was contractually indebted to the State.

[¶ 22.] In recognizing that Allison's obligation may be a "debt," the majority proceeds to assert that it "could not be characterized as a private debt." Whether a person contracts with a private citizen or the government should be immaterial. Our state constitution provides that "No person shall be imprisoned for debt arising out of or founded upon a contract." An attempted distinction between public and private debt makes little difference to the real issue here. *See DeGolyer*, 267 N.E.2d at 284 (holding that a tax is a debt and "one can not be imprisoned for the mere failure to pay taxes, in the absence of . . . fraud."). Pursuant to the plain language of the constitution, when a debt arises out of a contract, as it does here, the debtor can not be imprisoned. What will the majority do next—imprison students for delay or failure in repaying student loans?

[¶ 23.] The majority cites three cases where article VI, section 15 of the South Dakota Constitution was used to challenge other statutes. However, those cases can and should be distinguished from Allison's case. In *State v. Huth*, 334 N.W.2d 485, 489–90 (S.D.1983), we determined that imprisonment after failure to pay fees and costs was not violative of the provision. In *White Eagle v. State*, 280 N.W.2d 659, 661 (S.D.1979), we determined that repayment of court-appointed attorney's fees as a con-

dition of probation was not unconstitutional. Finally, in *Hanks v. Hanks*, 334 N.W.2d 856, 857–58 (S.D.1983), we held that imprisonment based on a neglect to pay alimony and child support obligations was not a debt founded on contract. The common thread throughout these cases is easily determined – the payment of money was *court-ordered.* The court ordered the defendant to pay fees and costs, the court ordered the defendant to pay his court-appointed attorney's fees, and the court ordered the obligor to pay alimony and child support. Clearly, the "debtor" in these cases was not imprisoned for the failure to pay a debt, the "debtor" was imprisoned for willful failure to obey the order of a court.

[¶ 24.] In contrast, Allison was not ordered by any court to return the military property. The only obligation he had to return the property was in accordance with the Enlistment/Reenlistment Agreement—it was a contractual duty to return property; there was no court-order here. Therefore, the majority's cases are easily distinguishable and unpersuasive.

[¶ 25.] A case more directly on point is *Commercial Nat'l Bank of Sturgis v. Smith*, 60 S.D. 376, 244 N.W. 521, 523 (1932) where this court analyzed a statutory amendment that determined that a contractor, who "appropriate[d] money paid to him for any use or purpose, other than that for which he received it," was guilty of embezzlement. In a 5–0 decision, the *Commercial* court stated:

> In our opinion the Legislature is without authority to provide that a contractor shall be deemed guilty of a crime punishable by imprisonment for failure to pay the claims of creditors furnishing labor and materials from money paid to him under contract.

*Id.* The source of the statute in question was a California statutory amendment as explained in *People v. Holder*, 53 Cal.App. 45, 199 P. 832, 834 (1921). The *Holder* case held that the legislature was without authority to "provide that a contractor who breaches his agreement to pay a certain class of debts with money that is his own shall, for that reason alone, be deemed guilty of a crime punishable with imprisonment." *Id.* at 524. *Commercial* adopted much of the *Holder* language:

> Any legislation that makes it a crime for one to use his own money for any purpose other than the payment of his debts is violative of section 15 of article 1 of the Constitution of this state, which expressly inhibits imprisonment for debt *except in cases of fraud.*

*Id.* (emphasis added). Not surprisingly, the *Commercial* court held that the South Dakota amendment was also unconstitutional because it conflicted with the state constitutional provision prohibiting imprisonment for debt arising out of or founded on a contract. *Id.*

[¶ 26.] Here, the majority prematurely and erroneously concludes that the statute is constitutional because they fail to address the issue of fraud. In accordance with *Commercial,* this statute can be constitutional only if the element of fraud is proven. Therefore, this statute could be constitutional only if the State establishes that Allison fraudulently kept the State's property.

[¶ 27.] In order to prove fraud, the State must prove that Allison made "a representation ... of fact, which was untrue and known to be untrue by [Allison], or else recklessly made; [and] made with intent to deceive and for the purpose of inducing the [State] to act upon it." *Klinker v. Beach,* 1996 SD 56, ¶ 13, 547 N.W.2d 572, 576 (citation omitted). A review of the record reveals that prior to the filing of criminal action, the South Dakota National Guard attempted to contact Allison by sending him two certified letters requesting the return of State property. Both letters were returned as "unclaimed." Then Allison was arrested for violating SDCL 33–5–15.1. Based on this record evidence, Allison made no representations of fact concerning the return of the State's property.

[¶ 28.] In summary, the first error of the majority is in determining that SDCL 33–5–15.1 is constitutional. The agreement between Allison and the State is a contractual duty to return military property. Allison's breach of contract resulted in his indebtedness to the State. Incredibly, under the majority's analysis, if the property was not returned because it was consumed, lost, stolen or destroyed, Allison would still be subject to felony prosecution. In other words, even if it was physically impossible for Allison to return the property because of destruction, the statute, as drawn, provides imprisonment for debt arising from contract. This is clearly unconstitutional.

[¶ 29.] The appropriate course of action for the State should be to seek civil remedies against Allison, such as replevin, specific performance or an action to collect the debt. Imprisoning Allison for breach of contract converts civil remedies to criminal punishment and is unconstitutional.[4]

[¶ 30.] The majority's second error is its failure to address the *Commercial* case and the absence of fraud. Even under the majority's erroneous analysis, the statute can not be considered constitutional unless fraud can be proven. There are no allegations of fraud against Allison, nor can fraud be determined by the record facts. I respectfully submit that it is the majority opinion that misses the point. Under the South Dakota Constitution, one cannot be imprisoned for debt arising from contract. Intent to deprive is simply a breach of contract and is not enough to imprison. Instead, there must be FRAUD.

[¶ 31.] The majority opinion turns upside down—American history, unanimous South Dakota precedent and the South Dakota Constitution. For what? The mere expediency of imprisonment for debt, for the State? What do we have to do?

Fight the American Revolution all over again? Against whom? The State? Or this court?

[¶ 32.] I vote to affirm the trial court's grant of Allison's motion to dismiss.

---

4. Footnote 3 of the majority opinion inquires whether the Government's remedy of replevin "[w]ould [ ] apply to an Air National Guard pilot who decided to keep a fully armed F–16?"

In peacetime, the answer depends upon the motives of the Government.

If the motive is the return of the airplane, the answer is replevin.

If the motive is revenge and punishment, the answer is imprisonment for debt.

Even Shakespeare's creditor in *The · Merchant of Venice* was denied his pound of flesh *nearest the heart.*