2003 SD 153

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**John Bryon MARTIN, Defendant and Appellant.**

Nos. 22736, 22744.

Supreme Court of South Dakota.

Argued Nov. 18, 2003.

Decided Dec. 30, 2003.

Lawrence E. Long, Attorney General, Ann C. Meyer, Assistant Attorney General, Pierre, for plaintiff and appellee.

David L. Claggett, Spearfish, for defendant and appellant.

GILBERTSON, Chief Justice.

[¶ 1.] John Martin (Martin) was convicted in two South Dakota counties on multiple counts of possession of child pornography in violation of SDCL 22–22–23.1, now repealed. On appeal, Martin challenges the constitutionality of the statute based upon the doctrines of overbreadth and vagueness. Martin also raises a due process challenge in regards to his multiple convictions. Martin further questions the sufficiency of the evidence used to convict him. For his fifth point of error, Martin contends his sentence unlawfully exceeded the statutory limits for violation of SDCL 22–22–23.1. Finally, Martin asserts the trial courts placed impermissible restrictions on his freedom when he was prohibited from owning a computer, accessing the Internet, possessing pornography, and having no unsupervised contact with children for a period of ten years. For the reasons set forth in this opinion, we reject Martin's arguments and affirm his convictions in both Lawrence County and Butte County, South Dakota.

## FACTS AND PROCEDURE

[¶ 2.] The source of this appeal can be traced back to Operation Avalanche, a massive state and federal effort designed to crack down on child pornography. As part of that effort, federal authorities investigated a Texas company engaging in the distribution and sale of child pornography over the Internet. After seizing this company's records, federal officials discovered information regarding the identities of individuals who had purchased child pornography from the business. Federal officials eventually provided South Dakota authorities with this customer list which included Martin's name, credit card number, e-mail address, and other information concerning the purchase of child pornography.

[¶ 3.] On April 9, 2002, state investigators contacted Martin at his business, the Sunshine Healthcare Center located in Lawrence County, South Dakota, concerning Martin's possible purchase of child pornography over the Internet. Martin agreed to speak with the investigators, and during this interview process he volunteered that he had intentionally sought out child pornography over the Internet. In addition, Martin voluntarily demonstrated to the investigators how he accessed child pornography through e-mails that contained website addresses.

[¶ 4.] Despite his admission that he intentionally sought out both hard-core and

soft-core child pornography, Martin told the investigators that he was disgusted by the material. According to Martin, after hearing his pastor preach about the evils of child pornography, he began a personal "crusade" to get this material off the Internet. In order to accomplish his goal, he began to compile a list of child pornography websites and to download and print pornographic images of children from the Internet. Martin maintained that it was his plan to send these materials to then Governor William Janklow so that the Governor would do something about getting child pornography off the Internet. Martin admitted, however, that despite the fact that this "crusade" had started about three years earlier, no such letter had ever been written to Governor Janklow.

[¶ 5.] During the interview at his business, Martin indicated he also had a computer system at his residence in Butte County, South Dakota. In response to a request from the investigators, Martin agreed to allow them to follow him home in order to look through his second computer. After briefly examining Martin's home computer, the detectives asked Martin to accompany them to the Spearfish Police Department to continue the interview. Martin agreed.

[¶ 6.] At the police station, the investigators told Martin he was not under arrest and was free to leave at any time. Martin indicated that he understood but was willing to resume the interview. Martin continued to maintain his possession of child pornography was related to his personal campaign to alert Governor Janklow to the ease with which such material could be obtained from the Internet. In response to further questioning, however, Martin

admitted this crusade had "got[ten] a hold of him" at some point during the past year. He also admitted that he became sexually aroused by the pornographic images of children he obtained from the Internet. In particular, Martin related he was most aroused by male children and even experienced orgasms on several occasions when he dreamed of these images. Martin confirmed he had spent more than $1,000 to purchase child pornography over the Internet.

[¶ 7.] After obtaining search warrants for Martin's business and residence, an investigator with specialized computer training examined both Martin's home and business computers. Both computer hard-drives contained files with child pornographic images involving vaginal intercourse, anal intercourse, fellatio, cunnilingus, masturbation, nude posing, or combinations thereof. In addition, Martin's "favorites" folder on his web browser contained web addresses with such names as "Preteen erotica," "Best boys," "Flawed, lolitas," and "PedoLove." A subsequent search on both computers revealed that the word "Janklow" did not appear on any document in either computer.

[¶ 8.] Subsequent to this investigation, grand juries in both Lawrence County and Butte County, South Dakota indicted Martin on several counts of possession of child pornography in violation of SDCL 22–22–23.1.[1] In Lawrence County, Martin was charged with twenty-nine counts of knowing possession of child pornography based upon twenty-nine photographs investigators retrieved from his business computer. After a court trial, Martin was found guilty on twenty counts of possession of child

---

1. In 2002, the South Dakota Legislature repealed SDCL 22–22–23.1 and 22–22–22 and enacted SDCL 22–22–24 et seq. to SDCL 22–22–25 in their place. Because Martin was convicted under SDCL 22–22–23.1 and 22–22–22, this appeal only challenges these statutes.

pornography. The court then sentenced Martin to serve concurrent penitentiary sentences of two years for each count. The court suspended all but forty-five days of the penitentiary sentence subject to certain terms and restrictions. Among these restrictions were prohibitions against Martin owning or possessing a computer and pornography. Additionally, Martin was required to register as a sex offender and submit to warrantless searches and seizures.

[¶ 9.] In Butte County, Martin was charged with ten counts of knowing possession of child pornography based upon ten images recovered from his home computer. After a court trial, Martin was found guilty on all ten counts. As a result, the trial court sentenced Martin to two years in the penitentiary for each crime, to be served concurrently. The court, however, suspended the execution of all but forty-five days of this sentence subject to additional conditions. Among these restrictions were requirements that Martin not possess any pornography, that he not access the Internet, and that he have no unsupervised contact with children under eighteen years of age.

[¶ 10.] Martin now appeals his convictions in both Lawrence County and Butte County. For ease of analysis and because each appeal raises the same substantive challenges, this opinion addresses both of Martin's appeals.

[¶ 11.] Martin raises the following issues in regards to his convictions for possession of child pornography in both Lawrence County and Butte County, South Dakota:

1. Whether SDCL 22–22–23.1 (2001 Version) is unconstitutionally overbroad in violation of the First Amendment's protection of Free Speech.

2. Whether SDCL 22–22–22 (2001 Version) and SDCL 22–22–23.1 (2001 Version) are unconstitutionally vague in violation of the Fifth and Fourteenth Amendments' guarantees of Due Process.

3. Whether Martin's convictions on multiple counts of Possession of Child Pornography violated the Double Jeopardy Clause of the Fifth Amendment.

4. Whether there was sufficient evidence to support Martin's convictions on multiple counts of Possession of Child Pornography.

5. Whether Martin's ten-year probationary periods for his convictions under SDCL 22–22–23.1 unlawfully exceeded the maximum statutory limits.

6. Whether the trial court properly prohibited Martin from accessing the Internet, using a computer, and possessing pornography for ten years as part of his sentence.

[¶ 12.] The following issue applies to Martin's conviction in Butte County, South Dakota only:

7. Whether the trial court properly prohibited Martin from any unsupervised contact with children under the age of eighteen years for a period of ten years as part of his sentence.

Affirmed.

## STANDARD OF REVIEW

[¶ 13.] In *State v. Allison,* we articulated the guiding principles we employ in reviewing challenges based upon alleged constitutional violations:

Challenges to the constitutionality of a statute meet formidable restrictions. *State v. Hauge,* 1996 SD 48, ¶ 4, 547 N.W.2d 173, 175. We review such challenges de novo. *Wegleitner v. Sattler,* 1998 SD 88, ¶ 4, 582 N.W.2d 688, 689 (citation omitted). We recognize a strong presumption of constitutionality. *Kyllo v. Panzer,* 535 N.W.2d 896, 898 (S.D.1995) (citing *Specht v. City of Sioux*

*Falls,* 526 N.W.2d 727, 729 (S.D.1995)). To be invalidated a statute must be proved a breach of legislative power beyond a reasonable doubt. *City of Chamberlain v. R.E. Lien, Inc.,* 521 N.W.2d 130, 131 (S.D.1994). Only when the unconstitutionality of a statute is plainly and unmistakably shown will we declare it repugnant to our constitution. *South Dakota Educ. Ass'n v. Barnett,* 1998 SD 84, ¶ 22, 582 N.W.2d 386, 392 (quoting *Poppen v. Walker,* 520 N.W.2d 238, 241 (S.D.1994) (citations omitted)). If a statute can be construed so as not to violate the constitution, that construction must be adopted. *Cary v. City of Rapid City,* 1997 SD 18, ¶ 10, 559 N.W.2d 891, 893 (citation omitted). Our function is not to decide if a legislative act is unwise, unsound, or unnecessary, but rather, to decide only whether it is unconstitutional.

2000 SD 21, ¶ 5, 607 N.W.2d 1, 2 (internal quotations omitted).

■ [¶ 14.] In reviewing challenges to the sufficiency of the evidence, we "accept [the] evidence, and the most favorable inferences to be fairly drawn therefrom, which will support the verdict." *State v. Buchholz,* 1999 SD 110, ¶ 33, 598 N.W.2d 899, 905. If any evidence, "including circumstantial evidence and reasonable inferences drawn therefrom" reasonably supports a theory of guilt, we will affirm the conviction. *Id.*

### ANALYSIS AND DECISION

[¶ 15.] **1. Whether SDCL 22–22–23.1 (2001 Version) is unconstitutionally overbroad in violation of the First Amendment's protection of Free Speech.**

■ [¶ 16.] Martin was convicted on several counts of possession of child pornography in violation of SDCL 22–22–23.1. Before trial, Martin made an unsuccessful motion to dismiss the charges against him based upon his contention that SDCL 22–22–23.1 was unconstitutionally overbroad in violation of the First Amendment's protection of free speech. On appeal, he reasserts his argument that the statute is unconstitutionally overbroad. As this argument presents a constitutional challenge to a statute, our review is de novo. *Wegleitner,* 1998 SD 88, ¶ 4, 582 N.W.2d at 689.

■ [¶ 17.] Freedom of speech is one of our most cherished and zealously guarded Constitutional liberties. The First Amendment to the United States Constitution declares that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. In addition, the South Dakota Constitution states that "[e]very person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right." SD Const. art. VI, § 5. As freedom of expression facilitates the free flowing exchange of ideas and debate which occupy the very heart of our democracy, any government regulation on the content of speech is generally subjected to the strictest of judicial review. *Simon & Schuster, Inc. v. Members of the New York State Crime Victims Board, et al.,* 502 U.S. 105, 116, 112 S.Ct. 501, 508, 116 L.Ed.2d 476 (1991); *see also Police Dept. of Chicago v. Mosley,* 408 U.S. 92, 95, 92 S.Ct. 2286, 2289, 33 L.Ed.2d 212 (1972).

■ [¶ 18.] The prohibition upon government regulation of speech is not inviolate, however. The government may regulate defamation, "fighting words," incitement, and obscene speech without violating the First Amendment. *Chaplinsky v. New Hampshire,* 315 U.S. 568, 571–72, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942); *see Simon & Schuster,* 502 U.S. at 127, 112 S.Ct. at 514 (KENNEDY, J., concur-

ring); *see also Sable Communications of California, Inc. v. FCC,* 492 U.S. 115, 125–26, 109 S.Ct. 2829, 2836, 106 L.Ed.2d 93 (1989). On the other hand, government regulation of speech which is merely "offensive" will be subjected to the strict scrutiny standard of review. *Cohen v. California,* 403 U.S. 15, 22–26, 91 S.Ct. 1780, 1786–89, 29 L.Ed.2d 284 (1971); *see RAV v. City of St. Paul, Minnesota,* 505 U.S. 377, 395–96, 112 S.Ct. 2538, 2550, 120 L.Ed.2d 305 (1992) (striking down as overbroad an ordinance criminalizing certain types of "hate speech").

■ [¶ 19.] Government regulation of pornography has proven to be a particularly contentious area in this country's free speech jurisprudence. Pornography, unless obscene, is afforded First Amendment protection. *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Over the years, the Supreme Court has utilized various tests in defining obscene material, including Justice Stewart's memorable "I Know It When I See It" test, *Jacobellis v. Ohio,* 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964) (STEWART, J., concurring), and the "Utterly Without Redeeming Social Importance" test employed in *A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Com. of Mass.,* 383 U.S. 413, 418, 86 S.Ct. 975, 977, 16 L.Ed.2d 1 (1966). Finally, in *Miller v. California,* the Supreme Court articulated a more practical three-part test to identify obscene material:

(a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest;

(b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and

(c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

413 U.S. at 24, 93 S.Ct. at 2615 (internal citations omitted). Thus, in order for the government to freely regulate pornography, the material must be obscene under the *Miller v. California* three-part analysis.

■ [¶ 20.] Pornography involving children, however, is an unprotected class of speech and is afforded no constitutional protection under the First Amendment. *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). States may therefore regulate and criminalize child pornography without satisfying the *Miller v. California* obscenity standard. *Id.* at 760–61, 102 S.Ct. 3348. In holding child pornography an unprotected class of speech, the *Ferber* Court identified the "State's interest in safeguarding the physical and psychological well-being" of children as the underlying rationale for allowing the criminalization of possession and dissemination of pornography involving minors. *Id.* at 756–57, 102 S.Ct. 3348 (citation omitted). As the Supreme Court recognized, "[a] democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens." *Id.* (quoting *Prince v. Massachusetts,* 321 U.S. 158, 168, 64 S.Ct. 438, 443, 88 L.Ed. 645 (1944)).

[¶ 21.] In *Ashcroft v. The Free Speech Coalition,* the Supreme Court clarified the scope of governmental power to regulate child pornography. 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). In *The Free Speech Coalition,* the Court held provisions of the Child Pornography Prevention Act of 1996 (CPPA) which criminalized the production and possession of "sexually explicit images that appear to depict minors but were produced without using any real children" to be in violation

of the First Amendment. *Id.* at 239–40, 122 S.Ct. 1389; 18 U.S.C.A. §§ 2256(8)(B), 2256(8)(D).[2] Because *Ferber's* rationale of classifying child pornography as unprotected speech relied upon the government's interest in protecting children harmed in the production process, the CPPA's criminalization of pornography that did not involve the exploitation of actual children was unconstitutionally overbroad. *Id.* at 250–52, 122 S.Ct. 1389. Although the government advanced several arguments linking "virtual" child pornography with the protection of children, the Supreme Court found any link to be too attenuated. Finally, because the statute did not contain an exception for speech with "serious literary, artistic, political, or scientific value," it could not ban "virtual" child pornography as obscene under the *Miller v. California* analysis. *Id.* at 246–247, 122 S.Ct. 1389.[3]

[¶ 22.] In this case, Martin contends the Supreme Court's holding and rationale in *The Free Speech Coalition* clearly renders SDCL 22–22–23.1 unconstitutional. Before its repeal in 2002, SDCL 22–22–23.1 provided:

> Any person who knowingly possesses any depiction fixed in any tangible medium of expression of a minor under the age of eighteen years engaging in a prohibited sexual act or in the simulation of such act or whose knowing possession encourages, aids, abets, or entices any person to commit a "prohibited sexual act" is guilty of a Class 6 felony.

For the purposes of this section, a depiction includes any depiction, representation, description, however perceived, and any data compilation or set of commands intended for use to store, to retrieve, or to generate such depictions, representations, or descriptions by any electronic means.

For purposes of this section, the term tangible medium of expression, includes, without limitation, printed materials, plastic media, photographs, film, and any electronic communications system used to display depictions.

SDCL 22–22–22 defined "prohibited sexual act" as "sexual intercourse, anal intercourse, masturbation, bestiality, sadism, masochism, fellatio, cunnilingus, or incest and any other sexual activity including nudity if such activity is depicted for the purpose of sexual stimulation." According to Martin, it is the use of the word "depiction" that makes the statute overbroad because it could possibly criminalize possession of "a computer generated representation of a minor, whether real or not" or even "the mere written word referring to a fictional minor."

[¶ 23.] Although Martin argues the statute under which he was convicted is overbroad because it may restrict protected speech, Martin's possession of child pornography involving actual children is clearly unprotected under the First Amendment. Generally, "a facial challenge to a statute is not allowed unless the challenger's own conduct involves constitu-

---

**2.** 18 U.S.C. § 2256(8)(B) extended the prohibition against child pornography to "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture" that "appears to be, of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(D) further criminalized any sexually explicit image that is "advertised, promoted, presented, described, or distributed in such a manner that conveys

the impression" it depicted "a minor engaging in sexually explicit conduct."

**3.** To illustrate the overbreadth of the CPPA sections at issue in *The Free Speech Coalition,* the Court noted that it could allow the criminalization of Shakespeare's *Romeo and Juliet,* along with the recent, widely acclaimed movies *American Beauty* and *Traffic.*

tionally protected expression." *State v. Asmussen*, 2003 SD 102, ¶ 3, 668 N.W.2d 725, 729. A challenge asserting the First Amendment doctrine of overbreadth is an exception to this general rule. *Virginia v. Hicks*, 539 U.S. 113, ——, 123 S.Ct. 2191, 2196, 156 L.Ed.2d 148, 157 (2003); *Asmussen*, 2003 SD 102, ¶ 3, 668 N.W.2d at 729. In *Hicks*, the Supreme Court articulated the underlying rationale for this exception:

> We have provided this expansive remedy out of concern that the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions. Many persons, rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech ... harming not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas.

539 U.S. at ——, 123 S.Ct. at 2196 (internal citations omitted).[4]

[¶ 24.] Our recent decision in *Asmussen* recognized the heavy burden a challenger asserting the doctrine of overbreadth must carry. 2003 SD 102, ¶ 5, 668 N.W.2d at 730. "In order to meet that burden, [a challenger] must show that the law's application to constitutionally protected speech is 'real' and 'substantial' in an absolute sense and in relation to the scope of the law's plainly legitimate application." *Id.*, ¶ 6. This substantial overbreadth must be discernable " 'from the text of [the law] and from actual fact.' " *Id.* (quoting *Hicks* 539 U.S. at ——, 123 S.Ct. at 2198, 156 L.Ed.2d at 159 (citation omitted)).

[¶ 25.] Here, Martin cannot carry this burden. The portions of the CPPA invalidated in *The Free Speech Coalition* were clearly aimed at imposing criminal penalties for the production or possession of "virtual" or "simulated" child pornography that did not involve actual children. 535 U.S. at 250–51, 122 S.Ct. at 1402. Thus, these provisions went beyond the protection of children rational of *Ferber*. *Id.* ("Virtual child pornography is not 'intrinsically related' to the sexual abuse of children, as were the materials in *Ferber*.") (citation omitted). In addition, because the statute failed to provide an exception for speech with serious literary, artistic, political, or scientific value, it affected a substantial amount of protected speech and failed under the *Miller v. California* obscenity analysis. *Id.* at 249, 122 S.Ct. 1389.

[¶ 26.] On its face, we believe SDCL 22–22–23.1 only applies to child pornography involving actual children. Unlike the invalidated sections of the CPPA, SDCL 22–22–23.1 does not explicitly apply to virtual or simulated child pornography. When interpreting a statute we presume the legislature intended to enact a valid statute, and where "a statute can be construed so as not to violate the constitution," we will adopt such a construction. *Allison*, 2000 SD 21, ¶ 5, 607 N.W.2d at 2. Therefore, we interpret the word "depiction" as applying to pornography involving actual children only.

[¶ 27.] In *Asmussen*, we recognized "[i]n addition to the language of the statute, it is also necessary to view the legislative purpose of the law." 2003 SD 102, ¶ 7, 668 N.W.2d at 730. Our interpretation that the

---

4. Arguably this "expansive remedy" is not applicable to this case as SDCL 22–22–23.1 has been repealed. Thus, no one else other than Martin will be faced with the prospect of being convicted under its terms. Nevertheless, we apply the more lenient rule as set forth in *Hicks*.

statute only applies to actual children is also supported by the enabling legislation of SDCL 22–22–23.1, entitled an "Act [to] prohibit the possession of *certain* forms of computer-related child pornography." 2000 SD Laws ch 105 (emphasis added). The use of the word "certain" in the legislation suggests the legislature did not intend the sweeping interpretation of SDCL 22–22–23.1 Martin advances.

[¶ 28.] Additionally, we note SDCL 22–22–23.1 is not fatally flawed because it lacks an exception for material with serious literary, artistic, political, or scientific value. Because the statute applies to pornography involving real, actual children, SDCL 22–22–23.1 need not meet the three-part obscenity test of *Miller v. California. Ferber*, 458 U.S. at 760–61, 102 S.Ct. at 3356–57.

[¶ 29.] The clear purpose of SDCL 22–22–23.1 is to protect the well-being of children harmed during the production process of child pornography. Protecting the health and welfare of our children is unquestionably a legitimate legislative goal. As the *Ferber* Court recognized, the future of our state and Nation depends upon the healthy and well-rounded development of our children. By purchasing, downloading, and saving images of child pornography on his computers, Martin actively supported the sexual exploitation of children. Through SDCL 22–22–23.1, the South Dakota legislature criminalized this repugnant act, and Martin has failed to demonstrate this statute's "real" or "substantial" effect on constitutionally protected speech. Therefore, Martin's challenge for overbreadth fails.

[¶ 30.] **2. Whether SDCL 22–22–22 (2001 Version) and SDCL 22–22–23.1 (2001 Version) are unconstitutionally vague in violation of the Fifth and Fourteenth Amendments' guarantees of Due Process.**

[¶ 31.] Martin next asserts SDCL 22–22–22 and 22–22–23.1 should be invalidated as unconstitutionally vague. Once again, we apply the de novo standard of review to constitutional challenges to statutes. *Wegleitner*, 1998 SD 88, ¶ 4, 582 N.W.2d at 689.

[¶ 32.] Although closely related, the overbreadth doctrine and the vagueness doctrine are "conceptually distinct." *Asmussen*, 2003 SD 102, ¶ 10, 668 N.W.2d at 731. Generally, the overbreadth doctrine addresses First Amendment free speech concerns while the vagueness doctrine is grounded upon due process guarantees found in the Fifth and Fourteenth Amendment of the federal Constitution and Article VI § 2 of the South Dakota Constitution. *Id.* The standard we typically employ under a vagueness analysis is whether "the prohibited act or omission is expressed in terms so vague that reasonable people of ordinary intelligence might apply [it] differently." *Id.* Such vagueness challenges are usually "examined in light of the facts of the case at hand." *United States v. Whiting*, 165 F.3d 631, 634 (8th Cir.1999); *Asmussen*, 2003 SD 102, ¶ 10, 668 N.W.2d at 731. A central concern of our vagueness analysis is whether a statute is written in such a manner as to "permit selective or discriminatory enforcement." *Id.*

[¶ 33.] Martin contends the words "depiction," "knowingly possesses," and "tangible medium of expression" render SDCL 22–22–22 and 22–22–23.1 unconstitutionally vague. In support of vagueness challenge, Martin raises several hypothetical situations which he believes illustrate the vague nature of these statutes. For example, Martin believes "depiction" and "knowingly possesses" are unconstitutionally vague because an image deleted from a computer but still accessible with special

software or an impression of a passage deemed to be child pornography on a tablet page could fall under the statute. In addition, Martin postulates a painting on a rock could constitute child pornography under the definition of "tangible medium of expression." Finally, Martin argues that any attorney or law enforcement officer engaged in the investigation or prosecution of a child pornography case would be guilty of violating the statute.

[¶ 34.] We find Martin's hypothetical situations unpersuasive. Martin admitted he purchased, downloaded, and saved pornographic images involving actual children on a number of occasions for at least three years. Martin even demonstrated to investigators how he accessed child pornography websites through e-mails he received. Martin admitted his "crusade" had "got[ten] a hold of him" and that he was sexually aroused by the images. Although Martin attempted to argue SDCL 22–22–23.1 was unconstitutionally overbroad, the statute undoubtedly prohibited the possession of pornographic pictures involving actual children. Looking at the facts at hand, we believe SDCL 22–22–22 and 22–22–23.1 provided Martin, a sixty-three year old man of normal intelligence, with adequate notice that his possession of child pornography was forbidden. See *Whiting,* 165 F.3d at 634–35.

[¶ 35.] We also note Martin's concern that any person involved in the investigation or prosecution of a case involving child pornography could be in violation of SDCL 22–22–23.1, is unfounded. In order to be criminalized under SDCL 22–22–23.1, a depiction of a "prohibited sexual act" must be used "for the purpose of sexual stimulation or gratification." SDCL 22–22–22. Thus, unless used for sexual gratification or stimulation, pictures in the possession of

attorneys and investigators involved in child pornography cases would not be criminalized under these statutes.[5]

[¶ 36.] Courts in both Lawrence County and Butte County, South Dakota convicted Martin for possessing several pictures of pornography involving actual children. SDCL 22–22–22 and 22–22–23.1 provided adequate notice to any person of normal intelligence that such possession of child pornography was illegal. In addition, Martin has failed to demonstrate that these statutes are so vague as to invite selective prosecution. Thus, Martin's claim that SDCL 22–22–22 and 22–22–23.1 are unconstitutionally vague must also fail.

[¶ 37.] **3. Whether Martin's convictions on multiple counts of Possession of Child Pornography violated the Double Jeopardy Clause of the Fifth Amendment.**

[¶ 38.] The trial court in Lawrence County convicted Martin on twenty counts of possession of child pornography, while the Butte County court convicted him on ten counts of possession of child pornography. Martin contends these convictions must be reversed on the grounds of multiplicity, in violation of the Double Jeopardy Clauses of the Fifth and Fourteenth Amendment of the federal Constitution and Article IX of the South Dakota Constitution. We review challenges raising the issue of multiplicity of charges under the de novo standard of review. *State v. Chavez,* 2002 SD 84, ¶ 10, 649 N.W.2d 586, 591. "[M]ultiple charges and punishments in a single prosecution will not violate double jeopardy if the Legislature plainly intended to impose cumulative punishments." *State v. Dillon,* 2001 SD 97, ¶ 14, 632 N.W.2d 37, 43–44.

---

**5.** The Legislature specifically addressed this situation in 2003 by enacting SDCL 22–22–

24.19, entitled "Child sexual exploitation laws inapplicable to certain official duties."

[¶ 39.] Martin cites to *United States v. Erickson*, an unpublished opinion, for the proposition that "a multiplicious Indictment is one that charges a single offense in multiple counts." 2001 DSD 30, ¶ 5 (DSD 2001). Martin then cites to *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) for the idea that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." The purpose of the *Blockburger* test is to determine whether the multiple offenses are actually the same in law or fact. *Id.*

[¶ 40.] Applying the *Blockburger* test, we do not believe the acts for which Martin was convicted are the same in fact. The images of child pornography found on Martin's computers were downloaded and saved at separate times. Moreover, these pictures involved the exploitation of different children. As the Wisconsin Supreme Court noted in a similar case:

> Even had [Defendant] downloaded all the image files in a very short period of time, the fact that there were more than 28 separate files supports a conclusion that he made a new decision to obtain each one. Every time he downloaded a new file, he recommitted himself to additional criminal conduct. Each decision to download more child pornography represented a new volitional departure.

*State v. Multaler*, 252 Wis.2d 54, ¶ 58, 643 N.W.2d 437, 449 (holding twenty-eight charges against defendant for possession of child pornography were not multiplicious).

[¶ 41.] Martin was charged and convicted for separate acts of downloading and possessing child pornography, and from the face of SDCL 22–22–23.1, we believe the Legislature intended to impose separate punishments in such a situation. Specifically, the statute provided that any "depiction" including but not limited to "any electronic communications system" constituted a Class 6 felony. *Id.* While Martin urges us to interpret "any electronic communications system" as encompassing an entire computer, we decline to do so. Despite Martin's assertion that such prosecution allowed the prosecutor to "tear the book apart and charge each page as a separate count," we believe each act of downloading and saving a picture of pornography involving children constituted a separate, prosecutable offense under SDCL 22–22–23.1.

[¶ 42.] Our interpretation of SDCL 22–22–23.1 comports with the underlying rationale of criminalizing child pornography, namely, the protection of the children who would otherwise be exploited during the production process of such material. *Ferber*, 458 U.S. at 756–57, 102 S.Ct. at 3355. This protection rationale extends to each child in each picture found on Martin's computers. Furthermore, we agree that "[a] computer hard drive is much more similar to a library than a book; the hard drive can store literally thousands of documents and visual depictions." *United States v. Vig*, 167 F.3d 443, 448 (8th Cir. 1999). To find otherwise would allow the Legislature to impose only one penalty for the storage of literally thousands of files of pornography involving children on a computer. We do not believe this is what the Legislature intended. Accordingly, Martin's prosecution for each image of child pornography on his computers violated neither the federal nor state constitution.

[¶ 43.] **4. Whether there was sufficient evidence to support Martin's convictions on multiple counts of possession of child pornography.**

[¶ 44.] Martin next challenges the sufficiency of the evidence presented by the prosecution to support his convictions for possession of child pornography in violation of SDCL 22–22–23.1. When reviewing the sufficiency of the evidence, we accept all evidence favorable to the verdict, and reasonable inferences therefrom, without weighing credibility or resolving conflicts. *Bucholz*, 1999 SD 110, ¶ 33, 598 N.W.2d at 905.

[¶ 45.] In this case, Martin admitted to viewing child pornography at various times over a period of three years on both his home and business computers. Martin confirmed he spent at least $1,000 of his own money on child pornography. He even demonstrated to investigators how he accessed these websites featuring child pornography through e-mails. Martin further admitted his "crusade" had "got[ten] a hold of him" and that he gained sexual arousal and pleasure from viewing these pictures to the extent that he experienced orgasms while dreaming about them. Finally, investigators were able to retrieve and print from Martin's computers actual copies of each picture for which he was convicted. Viewing this evidence in the light most favorable to upholding Martin's conviction, we believe the prosecution clearly presented sufficient evidence to convict Martin for possession of child pornography in violation of SDCL 22–22–23.1.

[¶ 46.] **5. Whether Martin's ten-year probationary periods for his convictions under SDCL 22–22–23.1 unlawfully exceeded the maximum statutory limits.**

[¶ 47.] After sentencing Martin to two years in the penitentiary for each conviction, both trial courts further imposed a ten-year probationary period. For his fifth point of error, Martin maintains that this ten-year probationary period unlawfully exceeded the maximum statutory limits allowed for violating SDCL 22–22–23.1.

[¶ 48.] We do not believe Martin can show that the imposition of this ten-year probationary period is in error. Martin received the maximum penalty for each violation of SDCL 22–22–23.1, which is two years. Thus, in Lawrence County where Martin was convicted on twenty separate counts, the trial court could have sentenced Martin to serve a maximum of forty years. In Butte County, the trial court could have sentenced Martin to a maximum of twenty years in the penitentiary. Martin, however, had all but forty-five days of his total sentence suspended. The trial courts' imposition of a ten-year probationary period is less than the total time Martin could have received for his multiple violations of SDCL 22–22–23.1 and does not exceed the statutory limit.

[¶ 49.] **6. Whether the trial court properly prohibited Martin from accessing the Internet, using a computer, and possessing pornography for ten years as part of his sentence.**

and

[¶ 50.] **7. Whether the trial court properly prohibited Martin from any unsupervised contact with children under the age of eighteen years for a period of ten years as part of his sentence.**

[¶ 51.] The court in Lawrence County prohibited Martin from owning or possessing a computer for ten years. In Butte County, Martin was prohibited from accessing the Internet or having unsupervised contact with minors for ten years. Both trial courts prohibited Martin from possessing pornography for a period of ten years.

[¶ 52.] Martin contends that the prohibition against pornography aspect of his sentence must be reversed for vagueness. In other words, Martin worries that he may

unknowingly violate this condition of his sentence because there is no bright line rule as to what constitutes "pornography." We acknowledge that "one [person's] vulgarity is another's lyric," and recognize the possibility that "one [person's] pornography may be another's keepsake." *Cohen,* 403 U.S. at 25, 91 S.Ct. at 1788; *United States v. Cabot,* 325 F.3d 384, 385 (2nd Cir.2003). However, we decline to strip trial courts of this power where the "condition at issue in the instant case is reasonably related to [the] offense and to the need to prevent recidivism and protect the public." *United States v. Paul,* 274 F.3d 155, 169 (5th Cir.2001).

[¶ 53.] We also note that it is not the function of this Court to provide a rigid definition of "pornography." If the State alleges Martin is in violation of the pornography aspect of his probation, Martin is entitled to notice and a hearing before any further deprivation of his liberty can occur. *State v. Christian,* 1999 SD 4, ¶ 15, 588 N.W.2d 881, 883 (citing *Black v. Romano,* 471 U.S. 606, 610, 105 S.Ct. 2254, 2257, 85 L.Ed.2d 636, 642 (1985) (citation omitted)). At the revocation hearing, Martin would have the opportunity to be heard and to present evidence as to whether the given material was actually "pornography" or something less. Thus, at this time we decline to reverse the trial courts' order prohibiting Martin from possessing pornography for a period of ten years.

[¶ 54.] Martin also challenges the trial court's prohibition against him possessing a computer or accessing the Internet during the ten-year probationary period. Martin argues that such a condition is "overly restrictive." At the outset, we note that the prohibition against the computer use seeks to protect the public and prevent recidivism. *Paul,* 274 F.3d at 169. Moreover, it is clearly a less harsh method of achieving these two goals than the alter-

native of imprisoning Martin for the same ten-year period.

[¶ 55.] Such prohibitions have been upheld as consistent with the goals cited above. *Paul, United States v. Crandon,* 173 F.3d 122 (3d Cir.1999); *United States v. Fields,* 324 F.3d 1025 (8th Cir.2003); *United States v. Zinn,* 321 F.3d 1084 (11th Cir.2003). We acknowledge that other courts addressing the issue have concluded to the contrary. *United States v. Sofsky,* 287 F.3d 122 (2nd Cir.2002); *United States v. Freeman,* 316 F.3d 386 (3d Cir.2003).

[¶ 56.] We conclude that those cases upholding these prohibitions are better reasoned because they offer the sentencing court the most flexibility. Our holding offers courts options other than locking up the defendant or risking unfettered access to the material which this opinion has already demonstrated victimizes young children. By the same rationale, we uphold the aspect of the sentence which prohibits Martin from having any unsupervised contact with minors for ten years.

[¶ 57.] Affirmed.

[¶ 58.] KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

[¶ 59.] SABERS, Justice, concurs specially.

SABERS, Justice (concurring specially).

[¶ 60.] I concur specially to point out that prohibiting the Defendant from owning or possessing a computer may be excessive punishment. The Defendant is required to submit *at any time* or *place* to a *warrantless* search and seizure and his computer can therefore be frequently searched and even continually monitored. A personal computer is frequently a necessity in today's life and business. This

portion of the sentence is unreasonable and should be vacated.