#24619-r-RWS & JKK

**2008 SD 108**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

THE PEOPLE OF THE STATE OF SOUTH
DAKOTA IN THE INTEREST OF Z.B., A MINOR CHILD
AND CONCERNING A.B. AND H.B., RESPONDENTS.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
BUTTE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JOHN W. BASTIAN
Judge

* * * *

STACI L. REINDL
FRANCY E. FORAL of
Reindl Law                           Attorneys for appellant
Spearfish, South Dakota              Z.B.

LAWRENCE E. LONG
Attorney General

JOHN M. STROHMAN
Assistant Attorney General           Attorneys for appellee
Pierre, South Dakota                 State of South Dakota.

* * * *

ARGUED APRIL 24, 2008

OPINION FILED **11/05/08**

#24619

SABERS and KONENKAMP, Justices.

[¶1.]        Z.B. admitted in juvenile court to committing two first degree rapes.
At the time of these offenses, he was fifteen.  He was court ordered to register as a
sex offender.  South Dakota law requires that Z.B. remain on the sex offender
registry for life.  Adults who commit the same offense may be able to have their
names removed from the registry if they obtain a suspended imposition of sentence.
There is no equivalent opportunity for juvenile offenders like Z.B.  Accordingly,
under the Equal Protection Clauses of the United States Constitution and the South
Dakota Constitution, Z.B. and similarly situated juveniles are denied equal
protection.  We reverse.

## I.

[¶2.]        At the time of the rapes, Z.B. was fifteen years old and residing with
his adoptive parents.  His adoptive parents had two biological children, G.B., a nine-
year-old girl and W.B., an eight-year-old boy.  The remainder of the family consists
of two other adopted girls, K.B., seven years old, and M.B., four years old.

[¶3.]        One night, Z.B. was watching the children while the parents were at a
meeting.  When the parents returned home, G.B. told them that Z.B. tried to "sex
her."  On January 18, 2007, a petition was filed that alleged Z.B. was a child in need
of supervision.  An investigation was conducted and it was determined that Z.B. had
engaged in sex with G.B. and K.B.  A third amended petition contained five counts:

> Count 1:  Child in Need of Supervision
>
> Count 2:  Sexual Contact with a Child Under Sixteen
> Years of Age, with the victim being G.B.

-1-

Count 3: Sexual Contact with a Child Under Sixteen
Years of Age, with the victim being K.B.

Count 4: Rape in the First Degree, with the victim being
G.B.

Count 5: Rape in the First Degree, with the victim being
K.B.

[¶4.] During the adjudicatory hearing, Z.B. admitted to Counts 4 and 5. A dispositional hearing was held where the circuit court ordered that Z.B. be remanded to the custody of the Department of Corrections and register as a sex offender. Z.B. appeals.[1]

---

1. Z.B. raises four issues:

    1. Whether SDCL 22-24B-2, which mandates a fifteen-year-old juvenile delinquent register as a sex offender, conflicts with Title 26 of the South Dakota Code thereby violating the exclusive jurisdiction of juvenile courts.

    2. Whether SDCL 22-24B-2, which mandates a fifteen-year-old juvenile delinquent register as a sex offender, violates the due process clause of the Fourteenth Amendment to the United States Constitution and Article VI, section 2 of the South Dakota Constitution.

    3. Whether SDCL 22-24B-2, which mandates a fifteen-year-old juvenile delinquent register as a sex offender, violates the right to equal protection guaranteed under the Fourteenth Amendment to the United States Constitution and Article VI, section 18, of the South Dakota Constitution.

    4. Whether SDCL 22-24B-2, which mandates a fifteen-year-old juvenile delinquent register as a sex offender, constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments of the United States Constitution and Article VI, section 23, of the South Dakota Constitution.

    Because our decision on Issue 3, equal protection, is unanimous, we treat that question first. On the issue of due process, our decision is not

(continued . . .)

#24619

## II.

[¶5.]       Z.B. challenges SDCL 22-24B-2 on equal protection grounds.  This raises questions of statutory interpretation and the constitutionality of a statute.  Both questions are reviewed by this Court de novo.  Buchholz v. Storsve, 2007 SD 101, ¶7, 740 NW2d 107, 110 (additional citation omitted).  There is a strong presumption a statute is constitutional.  Meinders v. Weber, 2000 SD 2, ¶28, 604 NW2d 248, 260 (citing State v. Laible, 1999 SD 58, ¶10, 594 NW2d 328, 331 (other citation omitted)).  Only when a statute plainly and unmistakably violates a constitutional provision will we declare it unconstitutional.  *Id.*  When deciding the constitutionality of a statute we do not determine whether the "legislative act is unwise, unsound, or unnecessary," but only if it is constitutional.  State v. Allison, 2000 SD 21, ¶5, 607 NW2d 1, 2.  In an equal protection challenge, "'[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.'"  Lehnhausen v. Lake Shore Auto Parts Co., 410 US 356, 364, 93 SCt 1001, 1006, 35 LEd2d 351 (1973) (citations omitted).

[¶6.]       In 1997, the Legislature amended our sex offender registration statute to require juveniles adjudicated of certain sex crimes to register as sex offenders.  SDCL 22-24B-2 provides in relevant part that:

> Any juvenile fifteen years or older shall register as a sex
> offender if that juvenile has been adjudicated of a sex crime as
> defined in 22-22-7.2, 22-24B-1(1), or 22-24B-1(9), or of an out-of-
> state or federal offense that is comparable to the elements of
> these three sex crimes or any crime committed in another state

---

(. . . continued)
        unanimous and separate writings appear below.  We decline to reach the
        remaining issues.

-3-

if the state also requires a juvenile adjudicated of that crime to register as a sex offender in that state.[2]

The sex offender statutory scheme does not exclude juvenile sex offenders from the notification provisions; juveniles fifteen or older having committed certain sex crimes are subject to the public access and notification provisions. *See* SDCL 22-24B-15 (making sex offender registration list a public document); SDCL 22-24B-21 (establishing a public internet site containing sex offender registration information);

---

2.     SDCL 22-22-7.2 provides:

> Any person, fifteen years of age or older, who knowingly engages in sexual contact with another person, other than his or her spouse if the other person is sixteen years of age or older and the other person is incapable, because of physical or mental incapacity, of consenting to sexual contact, is guilty of a Class 4 felony.

SDCL 22-24B-1 provides in relevant part that "a sex crime is any of the following crimes regardless of the date of the commission of the offense or the date of conviction:  (1) Rape as set forth in 22-22-1. . . ."

SDCL 22-22-1 defines rape as
[A]n act of sexual penetration accomplished with any person under any of the following circumstances:

(1) If the victim is less than thirteen years of age; or
(2) Through the use of force, coercion, or threats of immediate and great bodily harm against the victim or other persons within the victim's presence, accompanied by apparent power of execution; or
(3) If the victim is incapable, because of physical or mental incapacity, of giving consent to such act; or
(4) If the victim is incapable of giving consent because of any intoxicating, narcotic, or anesthetic agent or hypnosis; or
(5) If the victim is thirteen years of age, but less than sixteen years of age, and the perpetrator is at least three years older than the victim.

SDCL 22-24B-1(9) makes "[p]romotion of prostitution of a minor as set forth in subdivision 22-23-2(2)" a sex act requiring registration under SDCL 22-24B-2.

#24619

SDCL 22-24B-11 (requiring the participation in the National Sex Offender Public Registry).

[¶7.] "The equal protection clauses embodied in the Fourteenth Amendment to the United States Constitution and in Article VI, [section] 18 of the South Dakota Constitution guarantee equal protection of the laws to all persons." State v. Krahwinkel, 2002 SD 160, ¶19, 656 NW2d 451, 460. To prevail on his equal protection claim, Z.B. must satisfy a two-part test. First, he must show that the statute creates an arbitrary classification. In re Davis, 2004 SD 70, ¶5, 681 NW2d 452, 454 (additional citation omitted). "Second, if the classification does not involve a fundamental right or suspect [or intermediate] group, we determine whether a rational relationship exists between a legitimate legislative purpose and the classifications created."[3] Id.; Krahwinkel, 2002 SD 160, ¶19, 656 NW2d at 460.

[¶8.] Z.B. alleges that SDCL 22-24B-2 violates equal protection because fifteen, sixteen, and seventeen year olds adjudicated delinquent of sex crimes in juvenile court have no right to a jury, nor can they get their names removed from the sex offender registry by receiving a suspended imposition of sentence. See SDCL 22-24B-2; SDCL 23A-27-13; SDCL 23A-27-14. He alleges that this statute creates an arbitrary classification where juveniles are treated differently than

---

3. If the classification involves a suspect class or a fundamental right, we examine the law under strict scrutiny review. Krahwinkel, 2002 SD 160, ¶19 n9, 656 NW2d at 460 n9. If an intermediate class is involved (gender or legitimacy), intermediate review or the substantial relations test is used. Id. While Z.B. urges this Court to use strict scrutiny review, it is unnecessary to determine whether SDCL 22-24B-2 infringes on a fundamental right as we conclude the statute fails the rational basis test.

adults. When adult defendants receive a suspended imposition of sentence under SDCL 23A-27-13 and 23A-27-14 and comply with certain requirements, they may be removed from the sex offender registry. SDCL 22-24B-2. Z.B. argues that there is no legitimate legislative purpose rationally related to treating the juvenile sex offenders convicted of the same crimes as adult sex offenders differently and more harshly than the adult sex offenders.

[¶9.]        A state's classification scheme will be upheld under rational basis review with a "plausible" or "conceivable" reason for the distinction. U.S. R.R. Retirement Bd. v. Fritz, 449 US 166, 180-81, 101 SCt 453, 462-63, 66 LEd2d 368 (1980) (Stevens, J., concurring in the judgment), *reh'g denied*, 450 US 960, 101 SCt 1421, 67 LEd2d 385 (1981); *see also* Donald T. Kramer, *Standards of review generally – Rational basis test*, 16B AmJurConstLaw § 813 (Updated September 2008). The State alleges that the legitimate legislative purpose is the general policy behind the sex offender registry list -- public protection from sex offenders. Yet, it does not provide any rational basis why juveniles are treated differently and more harshly under the sex offender registration scheme.[4] Nonetheless, the United States Supreme Court has declared that

---

4.     As we noted in *Meinders v. Weber*:

> We have no legislative history to aid in determining the purpose of the sex offender registration statutes. However, 1994 S.D. Session Laws chapter 174 states that the statutes are "[a]n Act to provide for the registration of convicted adult sex offenders." In addition, 1995 S.D. Session Laws chapter 123 explains that the sex offender registration laws are "[a]n Act to track the whereabouts of certain sex offenders residing in South Dakota." We conclude that the Legislature's intention in requiring registration was to accomplish the regulatory

(continued . . .)

a legislature that creates these categories need not "actually articulate at any time the purpose or rationale supporting its classification." [] Instead, a classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."

Heller v. Doe, 509 US 312, 320, 113 SCt 2637, 2642, 125 LEd2d 257 (1993) (internal citations omitted).

[¶10.] "Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classifications is made." City of Aberdeen v. Meidinger, 89 SD 412, 416, 233 NW2d 331, 334 (1975) (quoting Baxstrom v. Herold, 383 US 107, 86 SCt 760, 15 LEd2d 620 (1966)). In our examination of the sex offender registry scheme and its disparate treatment of juvenile offenders, we cannot conceive of any state of facts to suggest a rational basis for the harsher treatment of juveniles. Thus, to the extent that SDCL 22-24B-2 requires Z.B. and other juveniles in the same situation to register, it is unconstitutional. The circuit court must rescind its order requiring registration.

[¶11.] Reversed.

[¶12.] All Justices concur.

---

(. . . continued)

purpose of assisting law enforcement in identifying and tracking sex offenders to prevent future sex offenses, especially those against children. Furthermore, the purpose of the public access to registrant information as provided in SDCL 22-22-40 was to alert the public in the interest of community safety, and to prevent and promptly resolve incidents involving sexual offenses.

2000 SD 2, ¶13, 604 NW2d 248, 255. There is no indication of any legislative purpose in treating juvenile sex offenders differently from adults.

#24619

KONENKAMP, Justice (writing for the majority on the issue of due process).

[¶13.] We address the due process question only to respond to the mistaken position in the dissent. Let it be clear, however, that having decided that SDCL 22-24B-2 creates an equal protection violation, we have no further warrant to also strike the statute on the more expansive view that it violates procedural due process. Nor is it our place, as the dissent would have it, to guide the Legislature in "crafting" new legislation. Prudence and judicial restraint counsel us to examine questions of constitutionality by the narrowest means. We are not legislators. Our duty is to remain within our constitutionally defined roles as judges. Nonetheless, the dissent wishes to go beyond our unanimous holding on equal protection to declare South Dakota's sex offender registry system unconstitutional because it fails to imitate New Jersey law. To understand why the dissent's view would compel South Dakota to enact the dissent's favored legislation, we must first examine the common background for sex offender registration laws in the United States.

[¶14.] Like all states, South Dakota is obligated to enact a sex offender registration and notification system, under certain federal guidelines.[5] States are granted considerable discretion in how they formulate their registry laws. South Dakota's compulsory system for notification and registration of sex offenders is

---

5. _See_ 42 USC § 14071, entitled "Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program." This law requires every state to enact a sex offender registration program at least meeting minimum guidelines specified by the United States Attorney General or they will "not receive 10 percent of the funds that would otherwise be allocated" to them as federal funding for law enforcement.

comparable to statutory schemes enacted in a number of other states.[6]  Compulsory

registration "requires that offenders satisfying statutory, offense-related criteria be

subject to registration and notification, affording offenders no right to a prior

hearing on the eligibility determination."[7]  To date, none of these similar state

systems have been declared unconstitutional on due process grounds.[8]  *See*

*generally*, George L. Blum, J.D., *State Statutes or Ordinances Requiring Persons*

*Previously Convicted of Crime to Register with Authorities as Applied to Juvenile*

*Offenders — Constitutional Issues*, 37 ALR6th 55 (2008).  Only a few states,

including Massachusetts, New Jersey, and New York, use a registration system

with special hearings for particularized risk assessments.  It is this minority

---

6.  *See* AlaCode § 15-20-21 (2008); CalPenalCode 290.001 *et seq.* (2008); ConnGenStat 54-251 *et seq.* (2008); 730 IllCompStat 150/3 *et seq.* (2008); KSA 22-4902 *et seq.* (2007); MCLA 28.722 *et seq.* (2008); MissCodeAnn 45-33-21 (2008); VAMS 589.400 *et seq.* (2008); NHRevStatAnn 651-B:1 *et seq.* (2008); NMSA 29-11A-2 *et seq.* (20089); SCCode Ann 23-3-410 *et seq.* (2007) (amending legislation pending); TCA 40-39-202 *et seq.* (2007) (amending legislation pending); UCA 77-27-21.5 *et seq.* (2008); VaCodeAnn 9.1-901 *et seq.* (2008).

7.  Wayne A. Logan, *Liberty Interests in the Preventive State:  Procedural Due Process and Sex Offender Community Notification Laws,* 89 JCrimL & Criminology 1167, 1175 (1999).

8.  *See, e.g.*, Marlett v. State, 878 NE2d 860 (IndCtApp 2007) (sex offender registration constitutional as applied to juvenile); *In re* Ronnie A., 585 SE2d 311 (SC 2003) (adjudicated juvenile sex offender has no liberty interest implicated in sex offender registration requirement).  *See also* People *ex rel.* C.B.B., 75 P3d 1148 (ColoCtApp 2003) (juvenile had no procedural due process right to hearing on whether he was dangerous before he was required to register as sex offender — whether juvenile was currently dangerous was immaterial under Colorado Sex Offender Registration Act).  *Contra* Doe v. Attorney General, 715 NE2d 37 (Mass 1999) (under the Massachusetts Constitution procedural due process required that juvenile be afforded an individualized hearing as a condition of registration).

scheme the dissent seeks to impose on South Dakota through the device of declaring our own registry system unconstitutional.

[¶15.] In advancing its cause, the dissent relies on New Jersey and Massachusetts decisions for the proposition that juvenile sex offenders hold a protected liberty interest that guarantees them special risk assessment hearings. *See* E.B. v. Verniero, 119 F3d 1077 (3dCir 1997) (requiring state to carry burden of persuasion at a Megan's Law hearing); Doe v. Poritz, 662 A2d 367 (NJ 1995) (requiring hearing on state's assessment of risk level); Roe v. Farwell, 999 FSupp 174, 197 (DMass 1998); *Attorney General,* 715 NE2d at 43. Those cases are premised on the legislative decisions made by New Jersey and Massachusetts to create sex offender risk assessment categories in the first place. Without those legislatively enacted categories, there would be no need for hearings on how a convicted or adjudicated sex offender should be categorized. Ignoring this background, the dissent would supplant our system with a New Jersey style assessment scheme, so that such hearings would then be obligatory for South Dakota. Worse, by its logic requiring risk assessment hearings for juveniles, the dissent not only seeks to invalidate the statute on which it focuses, it also threatens to invalidate all the remaining sex offender registry statutes in South Dakota as they pertain to adult sex offenders.[9]

---

9.  Although the author of the dissent takes the position today that the sex offender registry law is an unconstitutional due process deprivation only with respect to juveniles, he contended in an earlier writing, with precisely the same rationale, that the application of the registry law was also unconstitutional on due process grounds with respect to an adult convicted of statutory rape. *See Meinders,* 2000 SD 2, ¶¶55, 58, 604 NW2d at 266, 267

(continued . . .)

[¶16.]     It is important to closely examine the New Jersey system in order to understand why the cases the dissent relies on are wholly inapplicable to South Dakota. New Jersey's sex offender registry laws have a feature unlike anything in many states, including South Dakota. As part of New Jersey's original enactment, Megan's Law, offenders were classified into risk categories: low, moderate, or high. NJSA 2C:7-8(c) *et seq.* (2008). In *Poritz*, 662 A2d at 378, the New Jersey Supreme Court would later refer to these categories as tiers. If an offender was classified as a low risk, the first tier, the statute required that only law enforcement agencies likely to encounter the offender be notified of the offender's presence in the community. If an offender was classified as a moderate risk, the second tier, not only would law enforcement authorities be notified, but schools and certain community organizations would also have to be notified. The third-tier high-risk classification required notification of those members of the public likely to encounter the offender in addition to law enforcement and community organizations. South Dakota has no equivalent system of categorization.

[¶17.]     A problem for the New Jersey categorization scheme was that the state attorney general established the procedures for determining risk. Under the attorney general's procedure, county prosecutors and other law enforcement officials, not courts, were empowered to perform the risk assessment for each offender and determine the means of notification. There was no provision through

_____

(. . . continued)
　　　(Sabers, J., concurring in part and dissenting in part) (advocating a system
　　　classifying offenders according to their risk of recidivism).

-11-

which an offender could contest or appeal the risk level assigned to him or her. To add due process protections to the risk assessment procedure, the New Jersey Supreme Court in *Poritz* established a system whereby an offender could challenge the assigned risk level. 662 A2d at 378.

[¶18.] In South Dakota, our process is less complicated. Once an individual has been convicted or adjudicated of certain sex offenses, sex offender registration is automatically required. There is no need in South Dakota for a due process hearing after a conviction or adjudication because the offender has had full due process in the procedure of either having gone through a trial or having admitted guilt. Moreover, South Dakota does not have a statute requiring assessment of risk levels for sex offenders. Nonetheless, the dissent reasons that because juveniles do not have a separate due process hearing on risk level like New Jersey, our sex offender registry system is unconstitutional.

[¶19.] Addressing a similar challenge, the Kansas Supreme Court, in finding no due process violation in its statute, noted that its law "is to be distinguished from the sex offender registration acts of some other states, such as New Jersey and Massachusetts, which, by their terms, call for some additional assessment of the offender's individual characteristics or circumstances in order to determine the degree of public notification." State v. Wilkinson, 9 P3d 1, 7 (Kan 2000). Marking the dissimilarity, the Kansas court noted:

> The Kansas statute does not call for any preregistration individualized assessment of any offender's likely risk of reoffense or any assessment of the degree of public access that should occur, so there is nothing to be determined at a hearing. A similar distinction has been noted by some other courts in finding no procedural due process violations in other state's sex

> offender registration and notification acts. *See* Lanni v. Engler,
> 994 FSupp 849, 855 (EDMich 1998); Patterson v. State, 985 P2d
> 1007, 1017 (AlaskaCtApp 1999); People v. Logan, 705 NE2d 152
> (IllCtApp 1998); Com. v. Mountain, 711 A2d 473, 478
> (PaSuperCt 1998); State v. Heiskell, 895 P2d 848 (WashCtApp
> 1995), *rev'd on other grounds*, 916 P2d 366 (Wash 1996).

*Id*. at 8. As in Kansas, there is no due process flaw to fix in South Dakota's sex offender registration program. The only procedural due process to which adult and juvenile offenders are entitled in South Dakota is the process required to convict or adjudicate them of the underlying offense.

[¶20.]     If there were any remaining doubts, the United States Supreme Court laid the dissent's argument to rest in *Connecticut Dept. of Public Safety et al. v. Doe*, 538 US 1, 7, 123 SCt 1160, 1164, 155 LEd2d 98 (2003). There, the Court held that Connecticut's sex offender registration statutes did not violate the due process rights of registrants. Because the ultimate determiner whether a person had to register was the conviction of a sex crime, the Court found that the criminal procedures leading to conviction provided the registrant with sufficient procedurally safeguarded opportunities to challenge the conviction that triggered the registration requirement. *Id*. That analysis controls the due process question in this case. Z.B. was charged with sex offenses and was adjudicated of having committed those offenses beyond a reasonable doubt when he admitted the charges against him. He received all the procedural safeguards attending his juvenile hearing, and no further process was necessary. He does not challenge his adjudication of guilt.

[¶21.]     Following the Supreme Court's decision in *Doe*, several Illinois appellate courts rejected procedural due process challenges to sex offender registration laws made applicable to juveniles. Sex offender registration under

Illinois statutes, like those considered in *Doe*, arose solely from conviction of certain enumerated sex offenses:  whether the offender was currently dangerous was not relevant under the statutory scheme.  *See In re* D.R., 794 NE2d 888, 892 (IllCtApp 2003); *In re* J.R., 793 NE2d 687, 693 (IllCtApp 2003).  Under the Illinois statutes, the only material fact was the registrant's conviction of a sex offense; the registrant already had an opportunity to challenge the conviction at trial or in the juvenile adjudication hearing.  Thus, a due process hearing was not required before an offender became subject to the registration laws.  *In re* Phillip C., 847 NE2d 801, 809 (IllCtApp 2006); *J.R.*, 793 NE2d at 693.

[¶22.]        Similar to Connecticut and Illinois, South Dakota has an offense-based, rather than an offender-based, registry system.  Our law, like many other state registry laws, requires registration for those adjudicated or convicted of certain sex offenses, regardless of whether, in the opinion of some, they may or may not pose a risk of future recidivism.  Such predictions are problematic in any event.  In short, the fact that a juvenile offender might seek a hearing on whether he or she is or will be dangerous is of no relevance under South Dakota law.  All that is required for registration is an adjudication of delinquency for certain sex offenses.  That requirement turns on the adjudication of delinquency, and those charged as juvenile delinquents have a procedurally safeguarded opportunity to challenge their charges in juvenile court.

[¶23.]        In its analysis, the dissent goes beyond the scope of due process and declares South Dakota's sex offender registry laws deficient with respect to juveniles under New Jersey's self-styled "fundamental fairness doctrine."  That

doctrine, derived from the New Jersey Constitution, is applied "where not to do so will subject the defendant to oppression, harassment, or egregious deprivation." *See* State v. Yaskowitz, 563 A2d 1, 18 (NJ 1989) (Garibaldi, J., concurring and dissenting); State v. Gregory, 333 A2d 257, 261 (NJ 1975). *See also* Bruce D. Greenberg, *New Jersey's 'Fairness and Rightness' Doctrine*, 15 RutgersLJ 927 (1984). Aside from the obvious question whether it is legitimate to force upon South Dakota yet another prototype from New Jersey, it is unnecessary to do so here. Because Z.B. has complete relief with our holding on equal protection, we need not attempt to engraft on our law some standard from the New Jersey Constitution.

[¶24.]    Finally, the dissent wrongly conflates punishment with public regulation. Citing the United States Supreme Court's decision prohibiting the death penalty for juvenile murderers, the dissent argues that requiring juveniles to register as sex offenders constitutes unfair punishment for underage offenders. But, as we held eight years ago and the United States Supreme Court confirmed three years later, sex offender registration is not punishment. Smith v. Doe, 538 US 84, 105, 123 SCt 1140, 1154, 155 LEd2d 164 (2003); *Meinders*, 2000 SD 2, ¶34, 604 NW2d at 262. Such measures are not penal; they are regulatory. *Smith*, 538 US at 105, 123 SCt at 1154, 155 LEd2d 164; *Meinders*, 2000 SD 2, ¶34, 604 NW2d at 262.

[¶25.]    Concededly, the notion of maintaining lifetime sex offender registration for an offense committed by a fifteen year old raises questions about the suitability of such legislation. A system of classifying juvenile offenders according to risk with periodic reassessments similar to what a few other states have created

may perhaps be an idea worth considering. There might be other state registry schemes for juveniles that may also deserve examination. But such ideas, and the wisdom of implementing them, touch on legislative prerogatives. Legislators are "not required to act with perfect precision." *Meinders*, 2000 SD 2, ¶32, 604 NW2d at 261 (*quoting* Doe v. Pataki, 120 F3d 1263, 1283 (2dCir 1997)). "Our function is not to decide if a legislative act is unwise, unsound, or unnecessary, but rather, to decide only whether it is unconstitutional." *Allison*, 2000 SD 21, ¶5, 607 NW2d at 2. A Court risks impugning its constitutional authority—not to mention intruding on separation of powers—when it uses judicial review to foster its preferred legislation.

[¶26.]     It was our Legislature's choice to create certain protections for minors brought into our juvenile justice system. By the same token, the Legislature also had the right to balance the interests of juvenile delinquents with the need to safeguard other children against the threat posed by juvenile sex offenders. Contrary to the dissent's harsh portrayal, however, the Legislature has not ignored the distinction between juvenile and adult sex offenders. It should be noted that our registry system only requires juvenile sex offenders to register if they commit certain more serious sex offenses. Unlike adult sex offenders, who are required to register if they commit any of twenty different categories of offenses listed in SDCL 22-24B-1, juvenile sex offenders are required to register only if they commit any of three types of sex offenses: rape, sexual contact, or promotion of prostitution of a minor. SDCL 22-24B-2; SDCL 22-22-7.2; SDCL 22-24B-1(1); SDCL 22- 24B-1(9).

[¶27.]	To a child who has been raped or sexually molested, it matters little whether the perpetrator was an adolescent or an adult. Prevention of child sexual abuse is the overarching purpose behind sex offender registration and notification laws. The dissent's mandate for duplicate due process in juvenile sex offense cases upsets the balance conceived in our Legislature to account for both the needs of juvenile delinquents and the security of potential child victims. While denying that it is suggesting South Dakota must adhere to a certain jurisdiction's statutory scheme, the dissent nonetheless makes our registry law unconstitutional because it does not have a process like New Jersey's. No matter how fervently the dissent may feel our state's sex offender laws should be rearranged to mimic some other state's scheme, the laws governing public protection of children remain a legislative concern unless an enactment clearly and unmistakably violates constitutional limits. No showing has been made here that our registry laws violate constitutional parameters for procedural due process.

[¶28.]	Once our constitutional analysis becomes tied to some perceived advancement elsewhere, we lose touch with our limited roles as judges. After all, why, in the dissent's view, should the law of New Jersey, Massachusetts, or New York become the touchstone for constitutionality in South Dakota? Why not the law of Kansas, then, or, for that matter, Belgium? The dissent's writing is nothing but a blatant venture into judicial legislation.

[¶29.]	GILBERTSON, Chief Justice, and ZINTER, Justice, concur.

#24619

SABERS, Justice (dissenting on the issue of due process).

[¶30.]        Z.B. argues that SDCL 22-24B-2 is unconstitutional because it violates his rights to due process.[10]  The State claims that due process concerns are not implicated because the statute must infringe on a liberty interest and Z.B.'s interest in his reputation alone is insufficient.  Moreover, the majority asserts that this issue should not even be considered by this Court.  Whether a statute requiring a juvenile to register as a sex offender violates due process is a question of first impression in South Dakota.  Therefore, this analysis is important in providing guidance to the Legislature when it redrafts the juvenile sex offender registry statutes,[11] which it must do in light of our decision on equal protection.

[¶31.]        I disagree completely with the majority's writing that this dissent is "nothing but a blatant venture into judicial legislation."  Unlike the majority's "the sky is falling" approach, I respectfully submit that no harm will come from this writing, and possibly much good.  The South Dakota Legislature is composed of mature adults who will not be harmed by thinking about these concepts because they have the ability to accept or reject as they see fit.

10.    Furthermore, he claims SDCL 22-24B-2 deprives the juvenile courts of exclusive jurisdiction, in violation of Title 26 of the South Dakota Code, and violates the Eighth Amendment's prohibition against cruel and unusual punishment.  We agree that these issues need not be reached.

11.    We do not suggest that South Dakota must adhere to a certain jurisdiction's statutory scheme in crafting juvenile sex offender statutes.  Instead, we urge the Legislature to consider other states' statutory schemes when it comes to juvenile sex offender laws.  As mentioned in the majority writing regarding equal protection, other states provide avenues to protect juveniles' due process rights and the Legislature should carefully consider these options to protect the due process rights of juveniles in South Dakota.  *See* ¶19, *supra.*

-18-

[¶32.]    "Procedural due process protects certain substantial rights, such as life, liberty, and property, that cannot be deprived except in accord with constitutionally adequate procedures."  Esling v. Krambeck, 2003 SD 59, ¶16, 663 NW2d 671, 678 (citing Tri County Landfill Ass'n, Inc. v. Brule County, 2000 SD 148, ¶13, 619 NW2d 663, 668 (citations omitted)).  "Procedural due process 'is flexible and requires only such procedural protections as the particular situation demands.'"  Id. (quoting Tri County Landfill Ass'n, Inc., 2000 SD 148, ¶13, 619 NW2d at 668).  SDCL 22-24B-2 deprives Z.B. of liberty interests without accordingly providing him adequate procedures, which this situation clearly demands.

[¶33.]    The juvenile justice system is premised on a rehabilitative theory of justice, much unlike the harsher, more punitive adult system.  This Court has recognized that "'[t]he purpose of juvenile court proceedings is not to punish but rather to rehabilitate and correct a juvenile's behavior so as to avoid future confrontations with the law.'"  In re S.K., 1999 SD 7, ¶11, 587 NW2d 740, 742 (quoting State v. Jones, 521 NW2d 662, 667 (SD 1994)).  The application of sex offender registry laws to juveniles thwarts the two fundamental underpinnings of the rehabilitation model:  confidentiality and stigmatization.  Specifically in this case, SDCL 22-24B-2 can potentially take away the statutory protection of privacy for a fifteen-year-old juvenile adjudicated of certain sex crimes, forcing the juvenile to carry the accompanying stigma for life.[12]

---

12.    A person on the sex offender list may petition for removal ten years after the petitioner first registered.  SDCL 22-24B-19 provides:

(continued . . .)

#24619

[¶34.]     The juvenile justice system is structured to provide privacy so a child

may be rehabilitated and not have to carry the stigma of youthful transgression into

_____

(. . . continued)

> To be eligible for removal from the registry, the petitioner shall show, by clear and convincing evidence, that all of the following criteria have been met:
> (1) At least ten years have elapsed since the date the petitioner first registered pursuant to this chapter. For purposes of this subdivision, any period of time during which the petitioner was incarcerated or during which the petitioner was confined in a mental health facility does not count toward the ten-year calculation, regardless of whether such incarceration or confinement was for the sex offense requiring registration or for some other offense;
> (2) The crime requiring registration was for:
> (a) Statutory rape under subdivision 22-22-1(5), or an attempt to commit statutory rape under subdivision 22-22-1(5), but only if the petitioner was twenty-one years of age or younger at the time the offense was committed;
> (b) *A juvenile adjudication for a sex crime as defined in § 22-24B-1(1), 22-24B-1(9), or 22-22-7.2* ; or
> (c) An out-of-state, federal or court martial offense that is comparable to the elements of the crimes listed in (a) or (b);
> (3) *The circumstances surrounding the crime requiring registration did not involve a child under the age of thirteen*;
> (4) The petitioner is not a recidivist sex offender. A recidivist sex offender is a person who has been convicted or adjudicated for more than one sex crime listed in subdivisions 22-24B-1(1) to (17), inclusive, regardless of when those convictions or adjudications occurred. For purposes of this subdivision, a conviction or adjudication includes a verdict or plea of guilty; a verdict or plea of guilty but mentally ill; a plea of nolo contendere; a suspended imposition of sentence granted under § 23A-27-13, regardless of whether it has been discharged; a deferred prosecution agreement entered by a prosecutor; and a determination made in another state, federal jurisdiction, or courts martial that is comparable to any of these events; and
> (5) The petitioner has completely and truthfully complied with the registration and re-registration requirements imposed under chapter 22-24B.

(continued . . .)

-20-

adulthood. To that end, South Dakota law provides juveniles liberty interests by statutory protection of privacy in the juvenile code for those fifteen and under:

1) SDCL 26-7A-27 (confidentiality of juvenile records when in custody);
2) SDCL 26-7A-28 (release of identity only to person or party *specifically* authorized) (emphasis added);
3) SDCL 26-7A-36 (closed hearing unless *sixteen* years or older *and* a crime of violence) (emphasis added);
4) SDCL 26-7A-115 (sealed records);
5) SDCL 26-7A-27 (requires hearings to be closed and are only open if the juvenile is sixteen years old or older *and* is accused of a crime of violence).

These statutes indicate the Legislature's acknowledgement that juveniles are due special protections because "juveniles and adults are different, . . . they commit crimes for different reasons, and . . . they should be treated differently in the eyes of the law." Timothy E. Wind, *The Quandary of Megan's Law: When the Child Sex Offender is a Child*, 37 JMarshallLRev 73, 104-05 (2003). *See also* Fletcher v. State, 2008 WL 2912048, at \*15 (DelFamCt June 16, 2008) (stating that upon consideration of several cases, including two United States Supreme Court cases, "there is certainly a growing nationwide recognition that there are differences between adult sexual predators and juvenile sex offenders, as well as that they should be treated differently"); Britney M. Bowater, Comment, *Adam Walsh Child Protection and Safety Act of 2006: Is There a Better Way to Tailor the Sentences of Juvenile Sex Offenders?*, 57 CathULRev 817, 837-38 (2008). Subjecting juveniles to

---

(. . . continued)

(Emphasis added). Therefore, although it is possible for a juvenile to remove his or her name from the registry, it is not possible for Z.B. because his crimes involved a child under thirteen.

the mandates of SDCL 22-24B-2 obscures the foundational principles upon which

the juvenile justice system was built.[13]

[¶35.] Juveniles and adults in the justice system are not accorded the same

rights. In South Dakota, a juvenile, unless prosecuted as an adult, has no right to a

jury or a hearing before the juvenile is required to register as a sex offender. Nor

does a juvenile have the right to a hearing to determine whether he has been

rehabilitated or is currently a threat to the public before being released from the

juvenile system. Furthermore, a juvenile in South Dakota may not seek a

suspended imposition of sentence, which would remove him from the sex offender

list upon completion of probation. SDCL 22-24B-2. At the same time, an adult may

seek one. SDCL 23A-27-14. It is inconsistent that an adult would be accorded more

rights in this situation than a juvenile.

[¶36.] One of the statutory factors considered in deciding whether to transfer

a juvenile to adult court is "[t]he prospect for *adequate protection of the public* and

the *likelihood of reasonable rehabilitation of the juvenile*, if the juvenile is found to

have committed the alleged felony offense, by the use of procedures, services, and

---

13. Bowater notes that "both the American Bar Association (ABA) and the
    Coalition for Juvenile Justice vehemently oppose the application of [statutes
    such as SDCL 22-24B-2] to juvenile sex offenders." 57 CathULRev at 836.
    Specifically,
    > The ABA argues that [such] regulations, as applied to juveniles,
    > contravene research that "recognize[s] that juveniles are
    > generally less culpable than adults, and that their patterns of
    > offending are different from those of adults." Further, both
    > organizations argue that [these statutory] requirements will
    > negatively impact juvenile delinquency adjudications and
    > advancements in juvenile treatment.

    *Id.* at 836-37 (internal citations omitted).

facilities currently available to the juvenile court." State v. Krebs, 2006 SD 43, ¶6, 714 NW2d 91, 95 (emphasis added) (citing SDCL 26-11-4). In this case, if the State did not think Z.B. had a reasonable chance of rehabilitation and did not believe the public could be protected by keeping Z.B. in juvenile court, then the State could have made a motion to transfer Z.B. to the adult system. Here, however, the State kept the case in juvenile court. By virtue of being in the juvenile court system, we assume Z.B. has a reasonable chance of rehabilitation. "The purpose behind closed juvenile proceedings is to 'protectively rehabilitate juveniles' . . . , [and] 'the maintenance of *confidentiality is a necessary corollary of that purpose.*'" *In re* L.N., 2004 SD 126, ¶26, 689 NW2d 893, 900 (additional citations omitted).[14] These differences and inconsistencies in the treatment of liberty interests in juveniles cause us to conclude that South Dakota cannot require juveniles to publicly register as sex offenders unless they have been prosecuted as adults or afforded due process protections.

[¶37.] Admittedly, most courts that have considered the question have found that their state's sex offender (juvenile or adult) reporting statutory scheme does not violate due process. However, some courts have found a protected liberty interest. *See, e.g.,* Doe v. Attorney General, 715 NE2d 37, 43 (Mass 1999); Roe v.

---

14. One commentator has noted that "[c]ommunity notification may particularly hamper the rehabilitation of juvenile offenders because the public stigma and rejection they suffer will prevent them from developing normal social and interpersonal skills – the lack of these traits have been found to contribute to future sexual offenses." Michele L. Earl-Hubbard, *The Child Sex Offender Registration Laws: The Punishment, Liberty Deprivation, and Unintended Results Associated with the Scarlet Letter Laws of the 1990s*, 90 NwULRev 788, 855-56 (1996).

Farwell, 999 FSupp 174, 197 (DMass 1998); E.B. v. Verniero, 119 F3d 1077, 1106 (3dCir 1997); Doe v. Poritz, 662 A2d 367 (NJ 1995). Moreover, many of the cases cited by the State that do not find a violation of due process are distinguishable from the case at hand. The statutes analyzed in these cases and other cases finding the juvenile registration acts constitutional, provide constitutional due process safeguards. These safeguards include: hearings requiring clear and convincing evidence of dangerousness prior to registration on the list, limiting registration for juveniles, limiting or excluding public notification, or, in some cases, a combination of all these safeguards.[15] What is evident about the cases that declare juvenile sex offender registration statutes constitutional is that due process procedures exist in those statutory schemes that are conspicuously absent in South Dakota's statutes.

---

15. *See e.g.* Commw. v. Ronald R., 877 NE2d 918 (Mass 2007) (judicial hearing to waive registration requirement); Z.H. v. State, 850 NE2d 801 (Ind 2006) (reversing the juvenile court's determination, after a *hearing* requiring the *State* to prove by clear and convincing evidence that Z.H. would likely repeat crime and that Z.H. should be placed on the sex offender's list after discharge); *In re* Jeremy P., 692 NW2d 311, 322 (WisCtApp 2004) (citing *In re* Cesar G., 682 NW2d 1, 2 (Wis 2004) (noting a juvenile court had the discretion to stay the order requiring a juvenile to register as a sex offender); *In re* D.L.N., 741 NW2d 823 (Table) (IowaCtApp 2007), 2007 WL 2963981, *1 (review hearing conducted at end of juvenile treatment and confinement to determine whether juvenile should be placed on sex offender list); *In re* C.D.N., 559 NW2d 431, 433-34 (MinnCtApp 1997) (noting the juvenile's records are required to be kept confidential by law enforcement and the juvenile has limited registration in that he only remains registered for ten years or "until the probation, supervised release, or conditional release period expires, whichever occurs later."); J.C.C. v. State, 878 NE2d 544 (IndCtApp 2007), transfer granted, opinion vacated by *J.C.C.*, 891 NE2d 42 (March 20, 2008) (Table), (noting that a judge must conduct a hearing and find by clear and convincing evidence the juvenile is likely to commit another sex crime before a juvenile is required to publicly register as a sex offender).

Most noticeably, those statutory schemes provide due process protections to the juvenile in the form of a jury, and/or hearings, and/or confidentiality.

[¶38.] One Michigan court, that had previously upheld its state's juvenile sex offender registration statutes, indicated that it may reconsider its decision in the future.[16] *In re* Hardwick, 2004 WL 316459, *2 (MichCtApp Feb. 19, 2004) (unreported). In *Hardwick*, the court noted that:

> Although we hold that the SORA is not an unconstitutional deprivation of respondent's liberty or privacy interests, we express our concern over the draconian nature of this act. As noted above, under the requirements of the SORA, respondent's registration would remain confidential while she remains a juvenile; however, once she reaches the age of majority, that information would be added to the public database and would remain there for the rest of her life. Although we do not debate the seriousness of the circumstances surrounding the offense in this particular case, *we question the propriety of publicly and permanently labeling juveniles as convicted sex offenders.* Traditionally, our justice system has distinguished between juvenile delinquency and adult criminal conduct. MCL 712A.1(2), which confers jurisdiction over juveniles on the family division of the circuit courts, specifically states that "proceedings under this chapter are not criminal proceedings." MCL 712A.23 also limits the admissibility of juvenile records in both criminal and civil proceedings in an attempt to "hide youthful errors from the full glare of the public. . . ." People v. Poindexter, 138 MichApp 322, 326, 361 NW2d 346 (1984). *The public notification provisions of the SORA appear to conflict with our traditional reluctance to criminalize juvenile offenses and our commitment to keep juvenile records confidential. . . . We invite the Legislature to reconsider whether the implied purpose of the act, public safety, is served by requiring an otherwise law-abiding adult to forever be branded as a sex offender because of a juvenile transgression.*

---

16. The court declined to reach the issue as it was not ripe for review because the records were confidential while the juvenile remained a minor and were only public upon reaching majority age.

*Id*. at *2 (quoting People v. Wentworth, 251 MichApp 560, 568-69, 651 NW2d 773, 779-80 (2002)) (emphasis added).

[¶39.]     Prior to *Hardwick*, the Michigan Appeals Court in *Wentworth* noted that in prior cases it upheld the constitutionality of the juvenile registration requirements in part because juveniles were excluded from public notification. *Wentworth*, 651 NW2d at 779.  The court also noted that there were strict statutory safeguards in place to protect the confidentiality of registration data concerning juvenile sex offenders.  The *Wentworth* court went on to caution,

> However, the recent amendment of the statute removing those *confidentiality safeguards* raises questions about the continuing validity of our holding in Ayres.  Because respondent did not raise this issue on appeal, we will not address it in this opinion.

*Id*. at 779-80 (emphasis added).

[¶40.]     In 2005, the United States Supreme Court held that due process does not require a hearing to determine current dangerousness before the convicted sex offender's information could be publically disseminated through an Internet website.  Connecticut Dept. of Pub. Safety v. Doe, 123 SCt 1160, 1164, 538 US 1, 7, 155 LEd2d 98 (2005).  *Doe* is distinguishable from this case, however, because that Court determined whether *adult* sex offenders required a hearing.  *Id.*  In holding that no hearing was necessary, the Court noted that current dangerousness was not relevant to the statute.  *Id.*  Public notification hinged on conviction of a sex offense alone.

[¶41.]     The Supreme Court has not addressed whether juvenile sex offenders should be treated differently in the sex offender registry context, but has recently

ruled that juveniles should be treated differently than adults in other contexts.

Specifically in a juvenile death penalty case, the Court has recognized:

> The susceptibility of juveniles to immature and irresponsible behavior means "their irresponsible conduct is not as morally reprehensible as that of an adult." Their own vulnerability and comparative lack of control over their immediate surroundings mean juveniles have a greater claim than adults to be forgiven for failing to escape negative influences in their whole environment. The reality that juveniles still struggle to define their identity means it is *less supportable to conclude* that even a heinous crime committed by a juvenile is evidence of *irretrievably depraved character. From a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed.*"

Roper v. Simmons, 543 US 551, 570, 125 SCt 1183, 1195-96, 161 LEd2d 1 (internal citations omitted) (emphasis added); *see also Bowater, supra*, at 838-39.

[¶42.]     In light of the conduct at issue, the differences between adults and juveniles are still real and distinct. When considering treatment success for these offenders, one researcher has indicated:

> [J]uvenile sex offenders do respond better to treatment concepts over adult offenders . . . . Juvenile offenders possess a less deeply ingrained deviate sexual pattern than do adult offenders; they are still exploring alternative ways to receive sexual gratification, and their sexual fantasy is still evolving and not fully joined with their permanent behavior. Additionally, the youth offender is more available for learning effective interpersonal and social skills than are adult offenders.

*Wind, supra*, at 105-06. Sex offender registry laws, including SDCL 22-24B-2, "perform a protective function and are predicated upon the notion that sex offenders, be they adult or adolescent, will likely offend, abuse, or molest again." *Id.* at 106. Research does not support this allegation of higher recidivism rates

however, especially for juvenile offenders.[17]  *Id.  See also Fletcher*, 2008 WL 2912048, at \*20 (quoting a report submitted by Attorney General John Ashcroft, The Offices of Juvenile Justice and Delinquency Prevention, and The Office of Justice Programs of the United States Department of Justice and prepared by Sue Righthand and Carlann Welch, entitled *Juveniles Who Have Sexually Offended-A Review of the Professional Literature,* which states in part, "Existing studies suggest that a substantial proportion of these juveniles desist from committing sex offenses following the initial disclosed offense and intervention."); Elizabeth Garfinkle, Comment, *Coming of Age in America:  The Misapplication of Sex-Offender Registration and Community-Notification Laws to Juveniles*, 91 CalLRev 163, 193 (2003) (stating that "sex-reoffending rates are even lower for juvenile sex offenders than for adult sex offenders").  *But see* McKune v. Lile, 536 US 24, 33, 122 SCt 2017, 2024, 153 LEd2d 47 (2002).

[¶43.]        Ultimately, given the statutory protections of the juvenile code, the long-established unwillingness to criminalize juvenile offenses, the underlying purpose of rehabilitation in the juvenile justice system and our commitment to keep juvenile records confidential, juveniles should be treated differently in the sex offender registry statutes in South Dakota.  Specifically, due process requires that a juvenile sex offender receive a hearing to determine whether he has been rehabilitated before his information is released for anyone to see not only here in

---

17.    The majority claims that this dissent "threatens to invalidate all the remaining sex offender registry statutes in South Dakota as they pertain to adult offenders."  *See* ¶15, *supra*.  However, we stress that this dissent only applies to the juvenile sex offender statutes.

South Dakota, but from essentially any locality anywhere in the world, made possible by the World Wide Web.

[¶44.] Even if the Constitution did not require procedures to ensure due process in the juvenile sex offender registration statutes, the doctrine of fundamental fairness does require these procedures.

> [F]undamental fairness serves to protect citizens generally against unjust and arbitrary governmental action, and specifically against governmental procedures that tend to operate arbitrarily. [It] serves, depending on the context, as an augmentation of existing constitutional protections or as an independent source of protection against state action." State v. Ramseur, 106 NJ 123, 377, 524 A2d 188 (1987) (Handler, J., dissenting). This unique doctrine is not appropriately applied in every case but only in those instances where the interests involved are especially compelling. "Fundamental fairness is a doctrine to be sparingly applied. It is appropriately applied in those rare cases where not to do so will subject the defendant to oppression, harassment, or egregious deprivation." State v. Yoskowitz, 116 NJ 679, 712, 563 A2d 1 (1989) (Garibaldi, J., concurring and dissenting).

*Portiz*, 662 A2d at 422. The doctrine has been invoked when:

> [S]omeone was being subjected to potentially unfair treatment and there was no explicit statutory or constitutional protection to be invoked.
>
> Fundamental fairness is a doctrine that is an integral part of due process, and is often extrapolated from or implied in other constitutional guarantees. The doctrine effectuates imperatives that government minimize arbitrary action, and is often employed when narrowed constitutional standards fall short of protecting individual defendants against unjustified harassment, anxiety, or expense.

*Id.* (quoting *Yoskowitz*, 563 A2d at 27).

[¶45.] We have also discussed fundamental fairness in our cases. *See* Jenco, Inc. v. United Fire Group, 2003 SD 79, ¶15, 666 NW2d 763, 766 (noting the notions

of fundamental fairness prevent raising the statute of limitations over other considerations in determining whether a case should be dismissed under SDCL 15-6-41(b) or SDCL 15-11-11); State v. Engesser, 2003 SD 47, 661 NW2d 739, 761 (Sabers, J., concurring in part and dissenting in part) (arguing fundamental fairness is violated when a defendant must prove prosecutorial bad faith in failing to preserve potentially exculpating evidence); Nizielski v. Tvinnereim, 453 NW2d 831, 834 (SD 1990) (noting fundamental fairness requires reinstatement of a jury verdict); State v. Lamont, 2001 SD 92, ¶16, 631 NW2d 603, 610 (noting fundamental fairness requires a defendant the opportunity to present a complete defense); McClaflin v. John Morrell & Co., 2001 SD 86, ¶16, 631 NW2d 180, 185 (noting that fundamental fairness requires retention of jurisdiction until litigation "is completely and finally determined"). At the very least, fundamental fairness should prevent public notification of juvenile sex offenders without certain procedural protections. This is especially true when the goals of the juvenile justice system are different than adult criminal court, and it has been recognized that juveniles and adults should be treated differently. *Roper*, 543 US at 570, 125 SCt at 1195-96, 161 LEd2d 1; *see also In re* A.R.M., 154 P3d 556 (Table), 2007 WL 959621, *5 (KanCtApp 2007) (unpublished) (recognizing there are differences between juveniles and adults and that "[t]o this end, the legislature has reduced the length of time for which a juvenile offender who committed a sexually violent crime must register as compared to adults."). Moreover, "American society [has] rejected treating juvenile law violators no differently from adult criminals in favor of

individualized diagnosis and treatment." State *ex rel*. Camden v. Gibson Circuit Court, 640 NE2d 696, 697 (Ind 1994).

[¶46.]     The majority asserts that our discussion of the fundamental fairness doctrine is unnecessary.  However, we assert this analysis in the alternative to our due process analysis to emphasize the importance of juveniles receiving due process and fair treatment prior to being ordered to register as a sex offender for their entire life.  Requiring a juvenile to register on the sex offender list is likely to cause the juvenile sex offender "to feel unwanted, ostracized, and alienated as a result of community notification, [and] such a requirement can 'result in the unnecessary stigmatizing of many juvenile offenders for the rest of their lives.'"  *Bowater*, *supra*, at 843.  The interests involved here are especially compelling.

[¶47.]     We certainly recognize and do not diminish the magnitude of destruction and pain juvenile sex offenders can cause in the lives of their victims.  We are not advocating that those juveniles not receive consequences for their actions.  But due process should be satisfied before a juvenile is given a life sentence of registering as a sex offender, especially since his adult counterpart does not automatically face the same consequences.

[¶48.]     While the goals of sex offender registry are admirable, the application of the registry to a fifteen-year-old juvenile cannot be accomplished in violation of equal protection, procedural due process and fundamental fairness.  The sex offender registry statute in SDCL 22-24B-2 is unconstitutional to the extent it violates the equal protection and due process rights of fifteen-year-old juveniles adjudicated for certain sex crimes.  Accordingly, we should reverse the circuit court

not only because of equal protection violations, but because this statute violates procedural due process and fundamental fairness.

[¶49.] MEIERHENRY, Justice, concurs in this dissent.